UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x

ONYENAEMEKA ETHELBERTH,

                Plaintiff,

        -against-                       **MEMORANDUM & ORDER**
                                             12-CV-4856 (PKC)

CHOICE SECURITY COMPANY, CHOICE
GROUP, INC., CHOICE SECURITY
SERVICES, INC., CHOICE SECURITY
SERVICES, CHOICE SECURITY CO., and
GEORGE OMOGUN,

                Defendants.
------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

      Plaintiff Onyenaemeka Ethelberth ("Ethelberth") initiated this suit against his former

employer, Defendants Choice Security Company, Choice Group, Inc., Choice Security Services,

Inc., Choice Security Services, Choice Security Co. (collectively, "Choice"), and Choice's

president, George Omogun, to recover unpaid wages and overtime compensation. Ethelberth,

who formerly worked as an unarmed security guard for Choice, asserts that Defendants failed to

pay him overtime compensation in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et*

*seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 650 *et seq.* Ethelberth also

asserts claims based on Defendants' alleged underpayment of his "straight time" (non-overtime)

compensation, pursuant to NYLL § 190 *et seq.*[1] and common law theories of breach of contract

and unjust enrichment.

---

[1]      Plaintiff's Amended Complaint is not a model of clarity or precision. Although
Ethelberth purports to seek "wages *and* overtime" in both Counts Two and Three (Dkt. 17 ¶¶ 38,
40–43, 49–52 (emphasis added)), as discussed *infra*, his motion papers purport to seek only
overtime wages in Count Three. (Dkt. 49, (Plaintiff's Memo in Support of Summary Judgment

Defendants move for summary judgment on all claims in the Amended Complaint, asserting that (i) any "overtime" hours worked by Ethelberth were performed as an independent contractor for Choice; (ii) Defendant Omogun cannot be held individually liable as an employer; (iii) Defendants are not covered employers under the FLSA; (iv) the FLSA's statute of limitations bars Ethelberth's claim; (v) Ethelberth's breach of contract and unjust enrichment claims are duplicative of his claims under the FLSA and the NYLL; (vi) Ethelberth failed to exhaust his administrative remedies and cannot bring a claim for "prevailing wages" under the NYLL; and (vii) in the event Ethelberth's FLSA claims are dismissed, the Court should decline to exercise supplemental jurisdiction over his State law claims, as to which there is also no diversity jurisdiction.  (Dkt. 62 (Defendants' Motion for Summary Judgment)).

Ethelberth opposes Defendants' motion and cross-moves for summary judgment as to Defendants' liability under the FLSA, NYLL and common law.  Ethelberth asserts that: (i) all hours worked by Ethelberth for Choice were as a Choice employee and not as an independent contractor; (ii) Omogun may be held individually liable as an employer; (iii) Defendants qualify for enterprise coverage under the FLSA; (iv) Defendants' violation of the FLSA was willful, thereby extending the statute of limitations from two to three years; (v) Ethelberth's breach of contract and unjust enrichment claims are not duplicative; (vi) Ethelberth's breach of contract

---

("Pl. MSJ Memo"), at ECF 26–27) ("ECF" refers to the pagination generated by the Court's electronic docketing system and not the document's internal pagination).  Ethelberth appears to continue to seek straight time wages and overtime pay in Count Two, but the sum of his summary judgment briefing on this count is only three paragraphs.  (Pl. MSJ Memo at ECF 29–30).  As further explained below, because the Court is granting Ethelberth summary judgment as to his overtime claim under New York law in Count Three, the Court construes Count Two as seeking straight time wages and does not address his duplicative overtime claim under New York law in Count Two.  (*See* Section V, *infra*.)

claim for prevailing wages provided for by NYLL § 220[2] is not barred by any failure to exhaust administrative remedies; and (vii) there exists diversity jurisdiction for his State law claims. (Dkt. 47 (Plaintiff's Motion for Summary Judgment)).

For the reasons set forth below, the Court grants, in part, and denies, in part, the pending motions. The Court grants summary judgment to Ethelberth on the following issues relevant to Defendants' liability under the FLSA: the Court determines that Ethelberth was not an independent contractor when working for Choice, and that Omogun may be held individually liable as an employer. With respect to coverage under the FLSA, the Court grants summary judgment to Defendants on the issue of individual coverage, finding that Ethelberth has failed to establish that he is individually covered as an employee. The Court finds that a genuine issue of material fact exists as to Choice's coverage under the FLSA, and so denies summary judgment to both parties on Count Four of the Amended Complaint.

However, the Court finds that there is no genuine issue of material fact regarding Choice's liability to pay Ethelberth overtime compensation under NYLL § 650 *et seq*., and so the Court grants summary judgment to Ethelberth with respect to his claim for overtime compensation in Count Three. The Court dismisses Count One (breach of contract) and Count Two (unpaid wages under NYLL § 220) from this action for the reasons set forth below. Finally, the Court finds a genuine issue of material fact precludes summary judgment on Ethelberth's claim for unjust enrichment, and accordingly denies summary judgment to either party on Count Five.

---

[2]     Notably, despite alleging a violation of NYLL § 190 *et seq*. in his Amended Complaint (Count Two), Ethelberth relies on NYLL § 220 as the basis for his claim in his motion papers.

# BACKGROUND[3]

## I. Relevant Facts

Defendants Choice Security Company, Choice Group, Inc., Choice Security Services, Inc., Choice Security Services, Choice Security Co. (collectively, "Choice") provide unarmed security guards to their customers. (Dkt. 84 (Affidavit of George Omogun in Opposition to Plaintiff's Motion for Summary Judgment ("Omogun Aff.")), ¶ 2).[4] At all times relevant to this action, Choice supplied security guards to public construction projects by the New York City School Construction Authority ("SCA sites") and private sites, such as real estate developments and fast-food restaurants ("non-SCA sites"). (Defs. 56.1, ¶ 12; Pl. 56.1 Opp., ¶ 12).

Defendant George Omogun ("Omogun") is the president of Choice. (Omogun Aff., ¶ 1). At all times relevant to this action, he signed Choice's tax returns (Pl. 56.1, ¶ 16), and also paychecks for Choice's security guards (Pl. Ex. 11). He had authority to hire and fire employees (Pl. 56.1, ¶ 14), and set employee compensation (Pl. 56.1, ¶ 15). He had control over Choice's bank account and made personal purchases from it, which Defendants aver did not relate to the business of Choice. (Pl. 56.1, ¶ 17; Defs. 56.1 Opp., ¶ 17).

---

[3] Because the parties have cross-moved for summary judgment, there are four factual statements before the Court: Defendants' 56.1 Statement in Support of Summary Judgment ("Defs. 56.1"); Plaintiff's Opposition to Defendants' 56.1 Statement in Support of Summary Judgment ("Pl. 56.1 Opp."); Plaintiff's 56.1 Statement in Support of Summary Judgment ("Pl. 56.1"); and Defendants' Opposition to Defendants' 56.1 Statement in Support of Summary Judgment ("Defs. 56.1 Opp."). Unless otherwise noted, a standalone citation to a 56.1 Statement denotes that this Court has deemed the underlying factual allegation undisputed. Any citations to a party's 56.1 Statement incorporates by reference the documents cited therein. Where relevant, however, the Court may cite directly to underlying documents.

[4] Defendants submitted two versions of this affidavit, one supporting Defendants' Motion for Summary Judgment at Dkt. 71 and one opposing Plaintiff's Motion for Summary Judgment at Dkt. 84. They are the same affidavit except with respect to paragraphs 38–39 in Dkt. 84, which are not present in Dkt. 71. For simplicity's sake, the Court will refer to the Omogun Affidavit filed at Dkt. 84.

Choice hired Ethelberth as an unarmed security guard in December 2007. (Pl. 56.1, ¶ 20). He worked for Choice through June 2010. (Pl. 56.1, ¶ 21).[5] Choice set Ethelberth's work schedule, which varied, and determined his assignments. (Omogun Aff., ¶ 12). Ethelberth's duties included patrolling the job site, checking visitors' identification, safeguarding the equipment stored on site, and alerting the police to incidents that occurred at the site. (Defs. 56.1, ¶ 24(a); Omogun Aff., ¶ 12). He performed these duties at both SCA job sites and non-SCA job sites. (Pl. 56.1, ¶¶ 21–23). Ethelberth also performed cleaning work at one of the SCA sites. (Pl. 56.1, ¶ 56).

*Work at SCA sites.* Ethelberth worked up to 40 hours per week at SCA sites. (Pl. 56.1, ¶¶ 24–25; Ethelberth Aff., ¶¶ 5–6). He avers that he generally worked weekdays at SCA sites between the hours of 7:00 a.m. and 3:00 p.m. (*Id.*) Choice does not dispute that Ethelberth performed this work as Choice's employee. (Defs. 56.1 Opp., ¶ 41).

Choice paid Ethelberth on an hourly basis. (Pl. 56.1, ¶ 26). The parties agree that the wages Ethelberth received fluctuated. (Pl. 56.1 Opp., ¶ 14). Choice avers that the wages fluctuated based on Choice's contract for the project site, and that Ethelberth received wages for his work at SCA sites ranging from $8 to $16.61 per hour. (Defs. 56.1, ¶ 14; Defs. 56.1 Opp., ¶ 39.) Ethelberth avers that Choice orally agreed to pay him at prevailing wage rates,[6] and that the

---

[5]     Defendants dispute the end date of Ethelberth's employment, arguing that he last worked for Choice in March 2010. (Defs. 56.1 Opp., ¶ 21). However, because Defendants' records for Ethelberth show that he worked through June 2010, the Court accepts Plaintiff's end date of June 2010. (*See* Pl. Ex. 35).

[6]     Plaintiff's Exhibit 37 provides the prevailing wage schedules applicable to Ethelberth's time of employment. It shows that the prevailing minimum wage under New York law for an unarmed security guard in building services was $10.00 per hour from 7/1/2007 through 6/30/2008, $11.35 per hour from 7/1/2008 through 6/30/2009, and then varied between $11.25 and $13.25, depending on experience, from 7/1/2009 through 6/30/2010. (Dkt. 51, Pl. Ex. 37 (ranging from $11.25 for 0–6 months of experience to $13.25 for more than 24 months of experience)).

pay he received for work at SCA sites was often lower than the agreed-upon wage. (Pl. 56.1 Opp., ¶ 14; *see* Pl. Ex. 37). When working at SCA job sites, Ethelberth signed Daily Sign-Out Logs attesting to the wage rate, the start time, the end time and the total hours worked that day. (Defs. 56.1, ¶ 15). Ethelberth disputes whether Choice required him to sign a Daily Sign-Out Log to be paid. (Pl. 56.1 Opp., ¶ 15).

Ethelberth received his pay for his work at SCA job sites through Choice's payroll vendor, Paychex, on a bi-weekly basis and received a W-2 form for each year of his employment. (Defs. 56.1, ¶ 21; Pl. 56.1 Opp., ¶ 21; Omogun Aff., ¶ 34). Ethelberth's bi-weekly paycheck through Paychex never accounted for more than 80 hours over a two-week period. (Ethelberth Aff., ¶ 9).

*Work at non-SCA sites.* Ethelberth worked up to 20 hours per week at non-SCA sites, generally performing his work on weekday evenings and some weekends. (Pl. 56.1, ¶¶ 24–25; Dkt. 50 (Affidavit of Onyenaemeka Ethelberth ("Ethelberth Aff.")), ¶¶ 5–6). Ethelberth contends that he performed this work as a Choice employee. (Pl. 56.1, ¶¶ 27–28). Defendants, however, maintain that Ethelberth was an independent contractor when performing this work, based on Ethelberth's own agreement with Choice's operations manager, Perry Onah ("Onah"). (Defs. 56.1 Opp., ¶ 58; Omogun Aff., ¶¶ 19–20). According to Defendants, Ethelberth sought extra work at non-SCA sites as an independent contractor and agreed to be paid for such work outside of Choice's normal payroll and without any statutory deductions. (Omogun Aff., ¶ 21; Defs. 56.1 Opp., ¶ 58). As a result of this arrangement, Omogun directed Choice's operations

manager, Onah, to issue IRS Form 1099s[7] to Ethelberth for his non-SCA work. (Omogun Aff., ¶ 22; Defs. 56.1 Opp., ¶ 58).

For his work at non-SCA job sites, Ethelberth signed Office Timesheets, not Daily Sign-Out logs. (Defs. 56.1, ¶ 19; Pl. 56.1 Opp., ¶ 19; Omogun Aff., ¶¶ 31-33). Unlike Daily Sign-Out logs, Office Timesheets did not provide the applicable prevailing wage rate. (*See, e.g.*, Pl. Ex. 23).

It is undisputed that Ethelberth did *not* receive wages at one and one-half times his normal wage rate for hours he worked above 40 hours a week, which generally occurred at non-SCA sites, but also included some SCA sites. (Pl. 56.1, ¶¶ 22–25). Ethelberth avers that Choice paid him at an hourly wage rate that varied between $8.00 and $13.00. (Pl. 56.1, ¶¶ 69–81). Choice avers that they had a policy *prohibiting* overtime work by their guards, but Ethelberth maintains that Defendants *required* him to work overtime. (Defs. 56.1, ¶ 20; Pl. 56.1 Opp., ¶ 20).

Although there is no dispute that Choice provided Ethelberth a uniform to wear while performing his duties regardless of the job site (Defs. 56.1, ¶ 13), the parties disagree about the uniform's origins: Defendants claim that the uniform was both manufactured, and purchased from a store, in Long Island City, New York (*id.*),[8] whereas Ethelberth asserts that the uniform was manufactured overseas (Pl. Ex. 43). As evidence of the uniform's foreign origins, Ethelberth has submitted a photo of the purported Choice Security uniform with an inner label stating "Fabric of Thailand, Assembled in China." (Pl. Ex. 43). Ethelberth has also produced a

---

[7]    IRS Form 1099s are entitled "Miscellaneous Income," and report income earned by individuals as independent contractors during a given tax year.

[8]    Although asserting that the uniforms were "manufactured . . . in Long Island City, New York", Choice does not provide any evidence supporting that assertion. (Defs. MSJ Reply at ECF 13 (citing Defs. 56.1 Opp., ¶ 10)).

letter from Choice's purported New York uniform supplier, stating that it has not done business with Choice in the last ten years (Pl. Ex. 51). Defendants dispute Ethelberth's assertion about the uniform's foreign origins, arguing that the label depicted in Ethelberth's photograph does not belong to the uniform Choice purchased for their employees. (Omogun Aff., ¶ 38; Defs. 56.1 Opp., ¶¶ 8–11).

## II.    Procedural History

Ethelberth filed his complaint against Choice and Omogun on September 28, 2012. (Dkt. 1). On March 29, 2013, Ethelberth filed an Amended Complaint. (Dkt. 17). On March 14, 2014, Defendants moved for summary judgment on all claims, and Ethelberth cross-moved for summary judgment as to Defendants' liability under the FLSA, NYLL, and common law.[9]

## DISCUSSION

## III.    Standard of Review

Summary judgment is proper only where, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Redd v. N.Y. Div. of Parole,* 678 F.3d 166, 173–74 (2d Cir. 2012). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material within the meaning of Rule 56 where it "might affect the outcome of the suit under the governing law." *Id.* In determining whether there are genuine disputes of material fact, the court must "resolve all ambiguities and draw all

---

[9]      Ethelberth urges the Court to strike Defendants' opposition papers due to late service. (Pl. MSJ Reply at ECF 6; *see also* Dkt. 57). The Court declines to do so because the delay did not even amount to a full day, and did not prejudice Ethelberth.

permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir. 2003) (citation and quotation omitted).

This standard imposes the initial burden on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial. *Id.* at 324*; see also Anderson*, 477 U.S. at 256–57. The non-moving party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [their] version of the events is not wholly fanciful." *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998) (collecting cases). "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (quoting *Matsushita v. Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587.)

The same standard of review applies when the Court is faced with cross-motions for summary judgment, as here. *See Lauria v. Heffernan*, 607 F. Supp. 2d 403, 407 (E.D.N.Y. 2009) (citations omitted). When evaluating cross-motions for summary judgment, the Court reviews each party's motion on its own merits, and draws all reasonable inferences against the party whose motion is under consideration. *Morales v. Quintel Entm't, Inc.,* 249 F.3d 115, 121 (2d Cir. 2001).

## IV.    Count Four: Overtime Claim under the Fair Labor Standards Act

Ethelberth claims that Defendants violated the FLSA by failing to pay him overtime when he worked more than 40 hours a week.  (Am. Compl., ¶¶ 56–66).[10]  There is no dispute that Choice did not pay Ethelberth overtime at a rate of one and one-half times his regular wage for the hours that he worked beyond 40.  Rather, Defendants contend that they were not liable to pay Ethelberth overtime under the FLSA for the following reasons: (i) Ethelberth performed his "overtime" work as an independent contractor, not Choice's employee; (ii) Omogun cannot be held liable as an employer under the FLSA; (iii) the FLSA's overtime requirement does not apply to Choice or Ethelberth for lack of individual and enterprise coverage under the statute; and (iv) any violation is time-barred under the FLSA's statute of limitations.

### A.    Whether Ethelberth is an Employee or an Independent Contractor

Defendants contend that any "overtime" hours Ethelberth worked were performed as an independent contractor.  (Dkt. 69 (Defendants' Memo in Support of Summary Judgment ("Defs. MSJ Memo")) at ECF 17).  Ethelberth argues that any work he performed for Defendants was as a non-exempt employee of Choice, whether at SCA job sites or non-SCA job sites.  (Dkt. 63 (Plaintiff's Opposition to Summary Judgment ("Pl. Opp.")) at ECF 19).  Ethelberth also cross-moves on this issue.  (Dkt. 49 (Plaintiff's Memo in Support of Summary Judgment ("Pl. MSJ Memo")) at ECF 21).  Because the FLSA's overtime provision applies only to "employees" and not independent contractors, 29 U.S.C. § 207(a), if Ethelberth performed his "overtime" work as an independent contractor, the Court must dismiss his FLSA claim.

---

[10]    Despite the references to "wages and overtime" in Count Four of his complaint (Dkt. 1 ¶¶ 60–65), Ethelberth's moving papers make clear that he is only asserting a FLSA violation with respect to overtime pay, and not straight time wages.  (*See* Pl. MSJ Memo at ECF 25 ("Plaintiff is entitled to partial summary judgment on his claim for overtime pay.")).

The FLSA contains a broad definition for "employees," in accordance with the Act's remedial purpose. It defines "employee" as "any individual employed by an employer" and to "employ" as including "to suffer or permit to work." 29 U.S.C. §§ 203(e)(1); 203(g). It does not contain a definition for independent contractors. Notably, an employer's classification of a worker as an "independent contractor" is not controlling. *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1998).

In the absence of a statutory definition for independent contractors, courts use an "economic reality test" to determine whether an individual is an independent contractor. *See Brock*, 840 F.2d at 1058–59 (noting the test allows courts to judge whether, "as a matter of economic reality, the workers depend upon someone else's business for the opportunity to render service or are in business for themselves."). Under the economic reality test, courts consider the following non-exclusive factors: (1) the degree of control the employer exercises over the workers, (2) the workers' opportunity for profit or loss and their investment in the employer's business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship between the employer and employee, and (5) the extent to which the work is an integral part of the employer's business. *Id*. at 1058–59. No single factor is dispositive; the court's analysis is based on the totality of the circumstances. *Id*. at 1059. The existence and degree of each factor are considered questions of fact, while the ultimate determination regarding a plaintiff's status as an employee or independent contractor is a question of law. *Id*. at 1059.

The Court thus examines whether, as a matter of economic reality, Ethelberth's "overtime" work was performed as an employee or an independent contractor for Choice. *See Thomas v. Hudson*, No. 95-CV-0070, 1996 WL 280828 (W.D.N.Y. 1996) (conducting economic

reality analysis to determine whether the plaintiffs' overtime work was done as independent contractors or employees). Because Ethelberth's "overtime" work was largely performed at non-SCA sites, and Choice does not dispute that Ethelberth's work at SCA sites was performed as their employee, the Court limits its analysis to work performed at non-SCA sites. Based on an analysis of the foregoing factors, the Court finds that there is no genuine issue of material fact as to Ethelberth's status as Choice's employee at the time he worked at the non-SCA sites, which thus constituted overtime work he performed for Choice.

*Defendants' degree of control over employees.* The record shows that the Defendants exercised a substantial degree of control over Ethelberth when he was working at non-SCA job sites. While *Brock* makes clear that an employer "does not need to look over his workers' shoulders every day in order to exercise control," *Brock*, 840 F.2d at 1060, the record here shows that the Defendants essentially did just that with respect to Ethelberth's work at non-SCA job sites. Defendants state that Ethelberth was required to sign, complete and submit Office Timesheets to Choice in order to be paid. (Omogun Aff., ¶ 9). Though the Office Timesheets differed in form from the Daily Sign-Out logs used at SCA sites, the purpose of the two procedures was the same: to ensure that Choice was paid by the non-SCA customer for all of the work Ethelberth performed at the job site at Choice's direction. In addition, Choice controlled the number of hours worked by each of their employees. According to Omogun, Choice's policy was to limit their guards to 40 hours of work a week or less. (Omogun Aff., ¶ 14). Choice's operations manager, Onah, hired and supervised the company's security guards, including determining their pay, assigning them to work sites, setting their work hours and "*everything related to the security guards.*" (Omogun Aff., ¶ 12) (emphasis added). Because Onah was Choice's agent, his alleged control over the security guards is attributable to Choice. The record,

therefore, supports a finding in Plaintiff's favor on the employment relationship factor with respect to the non-SCA work sites. *See Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 1894, 190–91 (S.D.N.Y. 2003) (finding the fact that the defendants "hired, fired, transferred, and paid the delivery workers" weighed substantially in favor of finding an employment relationship).

*Plaintiff's opportunity for independent profit/loss and his investment in Defendants' business.* The record also shows that Ethelberth did not have any independent opportunity for profit or loss, nor have any investment in Choice's business, with respect to Ethelberth's work at non-SCA job sites. Choice negotiated the vendor contract for each non-SCA site, and paid their security guards at varied rates depending on the site. (Omogun Aff., ¶¶ 16–17). Choice informed the guards of the applicable rate to each site. (Omogun Aff., ¶ 17). Choice also purchased uniforms for their security guards to wear at both the SCA and non-SCA sites (Defs. 56.1, ¶ 13; Pl. 56.1 Opp., ¶ 13). This factor, therefore, also favors a finding that Ethelberth was an employee of Choice with respect to the work he performed at the non-SCA work sites. *See Ansoumana*, 255 F. Supp. 2d at 191 (finding the fact that the delivery workers were not required to make any up-front investment to perform their duties weighed in favor of finding an employment relationship); *Thomas*, 1996 WL 280828 at *8 (finding plaintiffs' opportunities for profit and loss from their business to be minimal, therefore supporting an employment relationship).

*Degree of skill/independent initiative.* The third factor also weighs in favor of finding an employment relationship between Ethelberth and Choice with respect to his work at non-SCA job sites. As part of his non-SCA work, Ethelberth served as an unarmed guard "act[ing] as [a] doorm[a]n . . . to observe and watch for security related issues" at businesses such as fast-food

restaurants. (Omogun Aff., ¶ 8; Pl. 56.1, ¶¶ 21, 23; Defs. 56.1 Opp., ¶¶ 21, 23). These duties do not require specialized skills or a high degree of independent initiative. *See Gustafson v. Bell Atl. Corp.*, 171 F. Supp. 2d 311, 326 (S.D.N.Y. 2001) (determining that the plaintiff's duties as a chauffeur required no specialized skill or initiative, thus suggesting that plaintiff was an employee).

*Permanence, duration of working relationship.* The record shows that Ethelberth worked for Choice, on essentially a full-time basis, from his hiring in December 2007 through June 2010. (Pl. 56.1, ¶ 21; Pl. Ex. 35). Because Ethelberth's employment with Choice clearly was not of a transient nature, this factor similarly favors a finding that Ethelberth was an employee and not an independent contractor of Choice.

*Extent to which work is an integral part of the business.* The final factor examines the extent to which the work performed by the plaintiff is integral to the defendants' business. *Ansoumana*, 255 F. Supp. 2d at 191–92 (finding delivery workers were engaged in the defendants' primary business, which was providing delivery services to retail establishment). Here, there is no dispute that the worked performed by Ethelberth as a security guard at the non-SCA job sites was integral to Choice's primary business of providing security services to their commercial clients. Thus, the final factor also favors finding an employer-employee relationship between Ethelberth and Choice with respect to his non-SCA work.

Based on the Court's analysis under the "economic reality" test, it is clear that Ethelberth depended upon Choice "for the opportunity to sell [his] labor and [was] not in any real sense in business for [himself.]" *Ansoumana*, 255 F. Supp. 2d at 192. All five factors weigh in favor of finding an employer-employee relationship between Ethelberth and Choice with respect to his duties at non-SCA job sites. Accordingly, the Court finds as a matter of law that Ethelberth was

Choice's employee during the entirety of his working relationship with Choice, whether he was performing his duties at a school construction site or a fast-food restaurant.

### B. Whether Omogun is an Employer Under the FLSA

The parties also seek a determination about whether Omogun, the president and sole owner of Choice, may be held liable as an employer under the FLSA. Defendants argue that Omogun does not exercise substantial or operational control over Choice's security guards; rather, during Ethelberth's employment, decisions regarding hiring, termination, pay rates, work assignments and schedules were made by Choice's operations manager, Onah. (Defs. MSJ Memo at ECF 25). Ethelberth argues that Omogun, in fact, exercises operational control over Choice's security guards, and therefore qualifies as an employer. (Pl. Opp. at ECF 33; Pl. MSJ Memo at ECF 25–26).

To be held liable as an employer under FLSA, "an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013). To determine whether an individual exercises operational control in relation to the plaintiff's employment, the Court examines whether the individual exercised authority over management, supervision, and oversight of the employer's affairs in general, as well as evidence under the *Carter* framework that reflect the individual's exercise of direct control over the plaintiff-employees. *See Irizarry*, 722 F.3d at 104–05 (citing *Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984)); *id*. at 111. The *Carter* framework includes the following four non-exclusive and overlapping factors: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id*. at 105

(citing *Carter*). The Court makes it determination based on the totality of the circumstances. *Id.* at 116.

Contrary to Defendants' assertions (Defs. 56.1, ¶ 28; Omogun Aff., ¶ 13), the record clearly shows that Omogun "exercised authority over management, supervision, and oversight of the employer's affairs in general." *See Irizarry*, 722 F.3d at 111. There is no dispute that Omogun had the authority to set employee compensation and sign Choice's tax returns. (Pl. 56.1, ¶¶ 15–16). Nor is there any dispute that Omogun had access to Choice's bank account and that he made personal purchases from it, thereby demonstrating his control over Choice's financial affairs. (Pl. 56.1, ¶ 17). *See Herman v. RSR Security Services*, 172 F.3d 132, 140 (2d Cir. 1999) (finding defendant's financial control over the company based on authority to sign paychecks). In addition, Omogun freely admits that he had the right to hire and fire employees, (Pl. 56.1, ¶ 14; Defs. 56.1 Opp., ¶ 14), and that, in fact, he terminated Ethelberth. (Omogun Aff., ¶ 23). Together, these facts establish the first *Carter* factor in favor of finding employer liability as to Omogun.

The evidence also establishes the second factor in the *Carter* framework. Though claiming that he did not set Ethelberth's work schedule, Omogun testified in his deposition that *he* did not let employees work more than 40 hours a week. (Pl. 56.1, ¶ 62) (emphasis added). Omogun also admits that upon learning that Ethelberth was working more than 40 hours a week, he instructed a Choice employee to issue a Form 1099 to Ethelberth (Omogun Aff., ¶ 22).[11] Omogun's policy on overtime work and his direction regarding the Form 1099 demonstrates that Omogun "controlled employee work schedules or conditions of employment." *Irizarry*, 722 F.3d at 105 (citing *Carter*).

---

[11] This fact alone strongly supports a finding that Omogun should be subject to employer liability, as he was aware of the conduct that forms the basis of Ethelberth's current lawsuit.

Omogun also admits that he set the compensation rates and amounts for Choice employees, thereby establishing the third *Carter* factor, *i.e.*, that Omogun "determined the rate and method of payment." (Pl. 56.1, ¶ 15). The fact that Omogun signed employee paychecks reinforces this conclusion. (Pl. Ex. 11); *see also Irizarry*, 722 F.3d at 115 (noting the individual defendant's signature on paychecks, while not dispositive, supported a finding against the defendant on the third *Carter* factor).

Lastly, the record does not speak to the fourth *Carter* factor, *i.e.*, whether Omogun "maintained employment records." Nevertheless, the other *Carter* factors unequivocally establish that Omogun exercised sufficient operational control over Choice's employees during Ethelberth's employment. Taken together with Omogun's general authority over Choice's affairs, the totality of the circumstances establishes that Omogun may be held liable as an employer under the FLSA. The Court therefore denies summary judgment to Defendants and grants summary judgment to Plaintiff on this issue.

### C.     Individual and Enterprise Coverage Under the FLSA

The Court now turns to the issue of whether Defendants were "engaged in interstate commerce" as required by the FLSA. 29 U.S.C. § 207. Upon review of the parties' submissions, the Court determines that genuine issues of material fact exist, precluding summary judgment on this issue.

Engagement in interstate commerce, either by an employee or by the employer as a whole, is a prerequisite for liability for the FLSA's overtime requirement. A plaintiff may satisfy this requirement by showing "individual coverage" through his personal engagement in interstate commerce or "enterprise coverage" through the employer's engagement in interstate commerce. *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 120 (E.D.N.Y. 2011)

(citing cases); *see also* 29 U.S.C. § 207(a)(1). The plaintiff-employee bears the burden of establishing FLSA coverage to prove his employer's liability. *Li v. Zhao*, No. 11-CV-5636, 2014 WL 3887860, at *3 (E.D.N.Y. Aug. 8, 2014) (citing *Owusu v. Corona Tire Shop, Inc.*, No. 09-CV-3744, 2013 WL 1680861, at *3 (E.D.N.Y. Apr. 17, 2013)).

First, Defendants argue that Ethelberth does not qualify for individual coverage under FLSA. Second, the parties both seek a determination regarding Choice's coverage as an enterprise under FLSA. The Court examines each of these arguments below.

*Individual Coverage.* A plaintiff can invoke "individual coverage" under the FLSA if he was "engaged in the production of goods for commerce" or otherwise "engaged in commerce." Because Ethelberth's duties were limited to providing security services and occasional cleaning, he cannot claim to have been involved in the production of goods for commerce. Thus, Ethelberth can only claim individual coverage under the FLSA on the basis of being "engaged in commerce" while employed at Choice.

To be "engaged in commerce," the employee must perform work "involving or related to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) *among the several States* or *between any State and any place outside thereof*." 29 C.F.R. § 779.103 (emphasis added). The plaintiff must work "in the channels" of "interstate or foreign commerce," or "in activities so closely related to this commerce, as to be considered a part of it," *e.g.*, "regular[] use [of] the mails, telephone or telegraph for *interstate* communication"; "regular[] travel *across State lines* while working." *Id.* (emphasis added). Activities that simply "affect or indirectly relate to interstate commerce" are insufficient. *McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943). As a basic rule, "if [the plaintiff] did not have

any contact with out-of-state customers or businesses, he cannot be individually covered under the FLSA." *Li v. Cheng*, No. 10-CV-4664, 2012 WL 1004852, at *4 (E.D.N.Y. Mar. 23, 2012).

Defendants claim that Ethelberth has not met his burden to show that he was an "employee engaged in the production of goods for commerce" or otherwise "engaged in commerce." (Defs. MSJ Memo at ECF 22). Defendants point to Ethelberth's testimony that his job duties were to patrol project sites and safeguard the equipment and materials thereon. (*Id.*) Ethelberth counters that, at these sites, he guarded tools, equipment, and supplies that had been manufactured out of state and overseas. (Pl. Opp. Memo at ECF 30–31).

While Ethelberth might be able to establish individual coverage by showing that these supplies and equipment were shipped to or from overseas or out-of-state destinations during his work shifts, Ethelberth has offered no such evidence. Instead, he relies solely on his own general statements that he guarded over items that were made outside of New York. This is insufficient to create a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 324 (party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial); *D'Amico*, 132 F.3d at 149 (non-moving party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [their] version of the events is not wholly fanciful"); *Boekemeier v. Fourth Universalist Soc'y in City of New York*, 86 F. Supp. 2d 280, 285 (S.D.N.Y. 2000) (noting that in the Second Circuit, sporadic and occasional shipment of insubstantial amounts goods indicates that a plaintiff's work is only "indirectly relate[d] to interstate commerce," and thus insufficient to support individual coverage under the FLSA.). Accordingly, the Court grants summary judgment to Defendants, and denies summary judgment to Plaintiff, on the issue of individual coverage.

*Enterprise Coverage*. The parties both seek summary judgment on the issue of whether Choice is subject to the FLSA through enterprise coverage. The standard for enterprise coverage under the FLSA is broader than that of individual coverage. An employer is subject to enterprise coverage if its "annual gross volume of sales made or business done is not less than $500,000" and it "has employees engaged in commerce or . . . [the] handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." 29 U.S.C. § 203(s)(1)(A).

"Enterprise coverage has been interpreted broadly by the courts." *Boekemeier*, 86 F. Supp. 2d at 285. So long as the employer achieves an annual gross business volume of $500,000 or more, "*all* of the employer's employees are covered under [FLSA] as long as at least *some* handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce." *Jones v. E. Brooklyn Security Services Corp.*, No. 11-CV-1021, 2012 WL 3235784, at *4 (E.D.N.Y. Aug. 7, 2012) (quoting 29 U.S.C. § 203(s)(1)(A)). Courts have found this element satisfied where employees "merely handled supplies or equipment that originated out-of-state." *Rodriguez,* 784 F. Supp. 2d at 121. Enterprise coverage "applies so long as some of the employees wear uniforms or use items such as radios, books, flashlights, clipboards, brooms, bags, and cleaning supplies that have moved in interstate commerce." *Jones*, 2012 WL 3235784, at *4 (citing *Rodriguez*, 784 F. Supp. 2d at 121 (listing cases); *Archie v. Grand Cent. P'ship*, 997 F. Supp. 504, 531–32 (S.D.N.Y. 1998) (listing cases)).

Choice does not dispute that they achieved an annual gross business volume of $500,000 or more, but does dispute that their employees handled goods or items that moved in interstate commerce. Choice maintains that their employees did not handle any goods or items produced outside the State of New York. (Omogun Aff., ¶ 11; Defs. 56.1, ¶¶ 12–13, 24(b)). Choice also

argues that the uniforms worn by their guards were purchased and manufactured in New York. (Omogun Aff., ¶ 11; Defs. 56.1, ¶ 13).[12]  Ethelberth counters with a letter from Choice's purported uniform supplier stating that it has not done business with Choice Security in the last ten years (Pl. Ex. 51), and with photographs purporting to show the Choice Security uniform with an inner label stating "Fabric of Thailand, Assembled in China."  (Pl. Ex. 43).  Choice partially responds to this evidence by arguing that the label depicted in the photographs is not from a Choice security guard uniform.  (Dkt. 80 (Defendants' Reply In Support of Summary Judgment Motion ("Defs. MSJ Reply")) at ECF 10; Omogun Aff., ¶ 38; Defs. 56.1 Opp., ¶¶ 8–11).  Thus, the provenance of Choice's uniforms is a genuinely disputed issue of material fact that should be resolved by a jury.

Ethelberth also points to bank transactions from Choice's account showing a number of out-of-state purchases.  (Pl. 56.1, ¶ 9; Pl. Ex. 41).  Choice maintains that any out-of-state purchases were for Omogun's personal use and were not connected to Choice's provision of security guard services.  (Defs. 56.1 Opp., ¶ 9; Omogun Aff., ¶ 39).  However, the nature of these out-of-state purchases is, again, a genuinely disputed issue of material fact that should be resolved by a jury.

---

[12]  As previously noted, despite asserting in their moving papers that Choice's uniforms are manufactured  in Long Island City, Choice does not provide any evidence to support this assertion.  (Defs. MSJ Reply at ECF 13 (citing Defs. 56.1 Opp., ¶ 10)).  While Choice's failure to proffer supporting evidence for their claim about the out-of-state manufacture of the uniforms could be likened to Ethelberth's failure to produce evidence to support his claim that the supplies and equipment he guarded over at job sites were manufactured out-of-state (*supra* at 19), the Court sees a critical difference.  Because Choice purchased the uniforms regularly over the course of years, and may still purchase the same uniforms now, Choice's claim regarding the source of the uniforms carries more weight than Ethelberth's generic claim about items that he had only fleeting contact with years ago, and as to which he has no basis for knowing their origins.

In sum, because a reasonable juror could find either for Ethelberth or Choice on the foregoing material factual issues, the Court denies summary judgment to both parties on the issue of Choice's enterprise coverage under the FLSA.

D.    Whether Defendants' Violation Was Willful

The parties have also cross-moved for a finding on the statute of limitations applicable to Ethelberth's FLSA claim.[13]   Defendants seek dismissal of Ethelberth's claim as being outside the FLSA's two-year statute of limitations.  (Defs. MSJ Memo at ECF 13–14).  Ethelberth, however, argues that Defendants willfully violated the FLSA and therefore the applicable statute of limitations is three years.  (Pl. Opp. at ECF 19; Dkt. 56 (Plaintiff's Reply In Support of Partial Summary Judgment ("Pl. MSJ Reply")) at ECF 8–9).

The applicable statute of limitations is based on a factual determination regarding Choice's knowledge or reckless disregard of the fact that they were legally required to pay overtime to Ethelberth for the work he performed beyond 40 hours each week.  *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 135 (1988)  (establishing that willfulness, for purposes of applying FLSA's three-year statute of limitation, requires that "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute"); *Young v. Cooper Cameron*, 586 F.3d 201, 207 (2d Cir. 2009) (applying *McLaughlin* "willfulness" standard); *Eschmann v. White Plains Crane Service, Inc.*, 11-CV-588, 2014 WL 1224247, at *5 (Mar. 24, 2014 E.D.N.Y.) ("district courts in this circuit have generally left the question of willfulness to the trier of fact . . . .When courts have decided the question of willfulness at the

---

[13]    FLSA provides for a two-year statute of limitations, unless the employer's conduct is "willful," in which case, a three-year statute of limitations applies.  29 U.S.C. § 255(a).  If Ethelberth cannot establish willfulness and thereby avail himself of the three-year statute of limitations, his FLSA claim will be barred.  (*See* Defs. Opp. at ECF 7 n.3 (noting a two-year statute of limitations would limit Ethelberth's claims to September 28, 2010 but that Ethelberth left Choice in June 2010)).

summary judgment stage, either the 'FLSA violation was due to a misclassification of the plaintiff as being exempt,' or there existed no genuine dispute that the employer had been on notice that it was subject to the FLSA.") (citations omitted).  Whether that factual determination is made at the summary judgment phase or at trial depends on whether there are disputed material facts regarding at least two issues: (1) Choice's obligation to pay Ethelberth overtime under the FLSA, and if so, (2) Choice's knowledge or reckless disregard of their obligation to do so.

As the Court previously found, there are material facts in dispute about Choice's enterprise coverage under the FLSA, which may be dispositive of the first issue and this action, *i.e.*, whether Choice is covered by, and obligated to pay overtime under, the FLSA.[14] Furthermore, the Court finds that there are also disputed issues of material fact on the issue of Defendants' knowledge or reckless disregard of their obligation to pay overtime under the FLSA. At a minimum, a reasonable jury could find that the evidence regarding Choice's decision to designate and treat Ethelberth as an independent contractor when performing work at non-SCA and some SCA sites that would otherwise entitle the guards to receive overtime pay establishes Choice's willful conduct to avoid compliance with federal and State statutory pay requirements. Indeed, Omogun's statements that he prohibited Choice's guards from working more than 40 hours per week to avoid paying them overtime, while simultaneously deploying Ethelberth to work as an "independent contractor" after he accumulated his weekly 40 hours, could be viewed as powerful evidence by the jury of such knowledge or reckless disregard.  Still, Omogun asserts

_____

[14]     Because the issue of whether an employer is covered by the FLSA may be dispositive of the entire action, some courts have deferred ruling on the applicable statute of limitations at the summary judgment stage where there exist disputed issues of fact on this threshold issue.  *See*, *e.g.*, *Cooke v. General Dynamics Corp.*, 993 F. Supp. 56, 65–66 (D. Conn. 1997) (deferring ruling on whether defendants willfully violated the FLSA due to outstanding issues regarding whether defendants violated the FLSA in the first place).

that Ethelberth made an arrangement to be treated as an independent contractor with Onah, not with Omogun, thus creating a disputed issue of fact. (Defs. Opp. at ECF 7–8). Accordingly, the Court denies summary judgment to both parties on the issue of Choice's willfulness and the applicable statute of limitations.

## V. New York Labor Law Claims

Ethelberth moves for summary judgment on Counts Two and Three of the Amended Complaint.[15] Count Two seeks unpaid wages under Article 6 of NYLL, NYLL § 190 *et seq*. (Am. Compl., ¶¶ 33–44; Pl. MSJ Memo at ECF 29–30). Count Three seeks payment of overtime wages under New York's Minimum Wage Act, codified at NYLL §650 *et seq*., and associated regulations.[16] (Am. Compl., ¶¶ 45–55; Pl. MSJ Memo at ECF 28–29). Defendant opposes Ethelberth's motion for summary judgment on these claims, and cross-moves for a finding that Ethelberth is barred by his failure to exhaust administrative remedies under New York's provisions applicable to building service employees. (Defs. Opp. at ECF 10–12; Defs. MSJ

---

[15]  As discussed *supra* in footnote 1, although Counts Two and Three both purport to seek unpaid straight time wages and overtime, Ethelberth's summary judgment briefing makes clear that he is only seeking overtime pursuant to Count Three, which pleads a cause of action under NYLL § 650 *et seq*. (the New York Minimum Wage Act). (Pl. Memo at ECF 26–28). Although Ethelberth continues to seek both straight time wages and overtime under Count Two, which pleads a cause of action under Article 6 of the New York Labor Law, the Court need not, and does not, address the duplicative overtime claim in Count Two because of the Court's decision to grant summary judgment to Ethelberth on his overtime claim in Count Three. In addition, because Ethelberth currently seeks summary judgment only as to Defendants' liability, the Court need not address his claims for liquidated damages, pre-judgment interest, and attorneys' fees and costs in both counts at this time.

[16]  New York's overtime requirement is codified in its regulations: "An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 U.S.C. 201 *et seq*., the Fair Labor Standards Act of 1938, as amended." N.Y. Comp. Codes R. & Regs. tit. 12 § 142–2.2.

Memo at ECF 11–14). The Court turns first to Defendants' argument on exhaustion of administrative remedies.

### A. Exhaustion of Administrative Remedies

Depending upon the nature of a plaintiff's claim under the NYLL, he or she may not be required to exhaust administrative remedies before bringing suit for unpaid wages. For claims brought pursuant to Article 6 of the NYLL, exhaustion is not required. *See* NYLL § 198(3) ("Investigation by the commissioner will not be a prerequisite to nor a bar against a person bringing a civil action under this section"). Nor is exhaustion required before bringing a claim for unpaid wages and overtime pursuant to the New York Minimum Wage Act. *See* NYLL § 663(1) (recognizing private right of action). However, Article 8 of the NYLL, which applies to public works projects, requires an employee to exhaust administrative remedies before bringing a private right of action. NYLL § 220(8); *see Igene v. Miracle Sec., Inc.*, No. 12-CV-149, 2013 WL 5502868, at *3 (E.D.N.Y. Oct. 2, 2013) (noting plaintiff's claim under NYLL § 220 required exhaustion of administrative remedies).

### 1. Count Two

Count Two of the Amended Complaint purports to assert claims under Article 6 of the NYLL, NYLL § 190 *et seq.*, for unpaid wages, but Ethelberth's moving papers reveal that Count Two is, in fact, based on the prevailing wage provision set forth in Article 8 of the NYLL, NYLL § 220. (*See* Pl. MSJ Memo at ECF 29–30; Pl. 56.1, ¶ 32 (citing NYLL § 220)).[17] Ethelberth

---

[17]     Article 6 of the NYLL is generally titled "Payment of Wages." *See* NYLL § 190 *et seq*. Count Two of the Amended Complaint claims that "Defendants violated the substantive provisions of the Labor Law, including without limitation Sections 191, 193 and 198." (*See* Am. Compl., ¶ 39). NYLL § 191 concerns frequency of payments, NYLL § 193 prohibits certain deductions from wages, and NYLL § 198 allows an employee to recover costs and other remedies for bringing a civil action to recover unpaid wages. Ethelberth's summary judgment

asserts that his straight time compensation for work performed at SCA sites was premised on the prevailing minimum wage under NYLL § 220. (*See* Pl. 56.1 ¶¶ 31–35). Because Ethelberth seeks recovery of wages at the rates set forth under NYLL § 220, the Court construes Count Two as alleging a violation of that provision, not NYLL § 190 *et seq.*, as pled.[18] *See Jara v. Strong Steel Door, Inc.*, 872 N.Y.S.2d 691 (N.Y. Sup. Ct. 2008) ("To the extent that prevailing wages are sought to be recovered, Labor Law § 191 is an inappropriate vehicle for such recovery. . . . Rather, Labor Law § 220 is the appropriate statutory provision applicable to plaintiffs' claims regarding prevailing wages.").

As noted above, before bringing a claim to recover wages at the prevailing wage pursuant to NYLL § 220, exhaustion of administrative remedies is required. The administrative process begins with the filing of an administrative complaint with the relevant fiscal officer, who then conducts an investigation and subsequently determines whether wages are due on the employee's claim. *See Brown v. Tomcat Electrical Security*, No. 03-CV-5175, 2007 WL 2461823, at *3

---

briefing on Count Two, however, does not put forth evidence on frequency of payments, deductions from wages, or costs and remedies due to Ethelberth.

What Ethelberth does assert, however, is that he is due straight time compensation pursuant to the prevailing wage, citing NYLL § 220. (Pl. 56.1 ¶ 32). That provision is contained in Article 8 of the NYLL, which is titled "Public Work." *See* NYLL § 220 *et seq.* NYLL § 220(2) sets forth that contracts with the state, public benefit corporation or municipal corporation (such as Choice's SCA contracts) "shall contain a stipulation that no laborer . . . in the employ of the contractor, subcontractor or other person doing or contracting to do the . . . work contemplated by the contract shall be permitted or required to work more than eight hours in any one calendar day or more than five days in any one week except in cases of extraordinary emergency . . . ." NYLL § 220(2). NYLL § 220(3)(a) goes on to provide that the wages to be paid for such work "shall not be less than the prevailing rate of wages as hereinafter defined."

[18]     Defendants read Ethelberth's NYLL claims as seeking unpaid wages at the prevailing wage rate pursuant to NYLL § 235, which falls under Article 9 of the NYLL. (Defs. MSJ Memo at ECF 11–13). But Ethelberth does not cite NYLL § 235 or its related provisions, which apply to building service employees. The Court finds it more appropriate to read Count Two consistently with Ethelberth's citation to NYLL § 220.

(E.D.N.Y. Aug. 27, 2007) (explaining administrative scheme under NYLL § 220).  There can be no judicial review until that determination.  *Id.*  Thus, to proceed on his claim for unpaid wages at the prevailing wage rate under Article 8 of the NYLL, Ethelberth must demonstrate that he has exhausted his administrative remedies.

Ethelberth asserts that he filed an administrative complaint for unpaid wages, but provides no further corroboration of this assertion.  (*See* Dkt. 66 (Onyenaemeka Ethelberth Affidavit ("Ethelberth Second Aff.")), ¶ 5).  Ethelberth provides no details regarding this supposed filing, such as the filing date, who may be adjudicating the complaint, or the status or outcome of that complaint.  Furthermore, even if Ethelberth did file an administrative complaint, nowhere does he aver that he saw the administrative process to completion.

The record thus fails to establish that Ethelberth has exhausted his administrative remedies.  *See Winsch v. Esposito Building Security*, 852 N.Y.S.2d 199, 200 (N.Y. App. Div. 2008) (affirming summary judgment dismissal of NYLL § 220 claim given lack of proof that any administrative determination had been rendered).  Nor will the Court permit Ethelberth to circumvent the statutory requirement to exhaust administrative remedies under NYLL § 220 by simply asserting, without providing proof that should be readily available to him, that he has met the exhaustion requirement.  The Court, therefore, grants summary judgment to Defendants on Count Two of the Amended Complaint, and dismisses it from this action.

### 3.  Count Three – Exhaustion of Administrative Remedies

Ethelberth brings Count Three of the Amended Complaint pursuant to the New York Minimum Wage Act, NYLL § 650 *et seq.*, and therefore is not required to exhaust administrative remedies before doing so.  Accordingly, the Court turns to the issue of whether Ethelberth qualifies for overtime under the New York Minimum Wage Act.

B.     Overtime Wages

"New York's Labor Law is the state analogue to the federal FLSA." *Santillan v. Henao*, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011). "Although the Labor Law 'does not require a plaintiff to show either a nexus with interstate commerce or that the employer has any minimum amount of sales,' it otherwise mirrors the FLSA in compensation provisions regarding minimum hourly wages and overtime[.]" *Id. (citing Chun Jie Yin v. Kim*, No. 07-CV-1236, 2008 WL 906736, at *4 (E.D.N.Y. Apr. 1, 2008)); N.Y. Lab. Law § 652; N.Y. Comp. Codes R. & Regs. tit. 12 § 142–2.2). Accordingly, courts in the Second Circuit have generally applied their analysis of a plaintiff's FLSA claim to a plaintiff's NYLL claim due to the substantial similarity in the provisions. *See Kleitman v. MSCK Mayain Olam Habba Inc.*, No. 11-CV-2817, 2013 WL 4495671, at *3 (E.D.N.Y. Aug. 20, 2013) (citing *Santillan*, 822 F.2d at 293).

To recover overtime wages under the New York Minimum Wage Act, Ethelberth must prove that he was an "employee" and that Defendants were "employer[s]" as defined by the statute and accompanying regulations. *See* NYLL § 650 *et seq.*; N.Y. Comp. Codes R. & Regs. tit. 12 § 142–2.2. An employee under the New York Minimum Wage Act is "any individual employed or permitted to work by an employer in any occupation . . . ." NYLL § 651(5). Having already found that Ethelberth was an employee of Choice within the meaning of the FLSA, the Court finds that Ethelberth was also an employee under the NYLL.[19]

---

[19]     Unlike Ethelberth's FLSA claim, Defendants do not attempt to defeat Ethelberth's NYLL claim for overtime by arguing that he was an independent contractor. To the extent Defendants did not intend to waive this argument, the Court briefly considers whether Ethelberth was an employee of Choice at all times under state law. In contrast to the federal economic reality test, New York focuses on the "degree of control exercised by the purported employer." *See Velu v. Velocity Express, Inc.*, 666 F. Supp. 2d 300, 307 (E.D.N.Y. 2009). "The critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Bynog v. Cipriani Group, Inc.*, 1 N.Y.3d 193, 198 (2003). Due to Choice's control

The NYLL's definition of an employer is broader than that contained in the FLSA, reaching "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer." NYLL § 651(6). While a genuine issue of material fact regarding Choice's engagement in interstate commerce precluded a determination on Choice's coverage under the FLSA, interstate commerce is not relevant to an employer's liability under the NYLL provisions at issue here. *See Santillan*, 822 D. Supp. 2d at 292. Because there is no dispute that Choice "act[ed] as an employer," NYLL § 651(6), the Court easily finds that Choice is an employer for purposes of the New York Minimum Wage Act.

The Court also finds that Omogun may be held individually liable for Ethelberth's claim for overtime under the NYLL. As the Second Circuit recognized in *Irizarry*, the New York Court of Appeals has not yet answered the question of whether the FLSA's test for "employer" is the same as for the NYLL. *Irizarry*, 722 F.3d at 117. Nevertheless, the Court notes that districts in this Circuit "have consistently interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA." *Yu Y. Ho v. Sim Enterprises, Inc.*, No. 11-CV-2855, 2014 WL 1998237, at *10 (S.D.N.Y. May 14, 2014) (citing *Moon v. Kwon*, 248 F. Supp. 2d 201, 236 n.17 (S.D.N.Y. 2002)). The Court finds no reason to depart from this interpretation. Having found that Omogun was an employer under the FLSA, the Court finds that Omogun also qualifies as an employer under the New York Minimum Wage Act.

Having resolved the threshold questions of liability in Ethelberth's favor, the Court finds that there is no dispute of fact regarding Defendants' failure to pay Ethelberth overtime

---

over Ethelberth's work assignments, schedule, and wages, *see supra* at 12–13, the Court easily finds that Ethelberth was not an independent contractor under New York law.

compensation at a rate of one and one-half times his regular wage.[20]  *See* Section IV, *supra*.

Accordingly, the Court grants summary judgment to Ethelberth with respect to his claim for

overtime pay in Count Three of the Amended Complaint.

## VI. Common Law Claims for Breach of Contract and Unjust Enrichment

### A.  Whether Ethelberth's Common Law Claims are Duplicative

Defendants seek dismissal of Ethelberth's common law claims for breach of contract

(Count One) and unjust enrichment (Count Five), arguing that these claims are duplicative of

Ethelberth's FLSA and NYLL claims.  In Defendants' view, Ethelberth's state common law

claims are duplicative because they "are premised squarely on violations of the FLSA and NYLL

and not upon some other agreement between the parties."  (Defs. MSJ Memo at ECF 8–11).

Ethelberth opposes, arguing that he may maintain claims in the alternative and that such claims

are based on Defendants' promise that he would be paid the "prevailing wage rate."  (Pl. Opp. at

ECF 25–26).

The Second Circuit has not squarely addressed whether common law claims for overtime

are preempted by the FLSA.  *Kaur v. Royal Arcadia Palace, Inc.*, 643 F. Supp. 2d 276, 297

(E.D.N.Y. 2007) (noting "law is unsettled as to whether the FLSA preempts state common law

claims").  However, courts in the Second Circuit have allowed common law claims for straight

time compensation to go forward so long as they are not premised on the same facts as the FLSA

claim.  *See Acevedo v. WorkFit Med. LLC*, No. 14-CV-06221, 2014 WL 4659366, at *14

(W.D.N.Y. Sept. 17, 2014) (finding state common law claims preempted with respect to

---

[20]  Though the Court only determines Defendants' liability to pay overtime under the NYLL, the Court notes that the correct rate is based on the rate *actually paid* to Ethelberth for normal, non-overtime hours.  *See Brown*, 2007 WL 2461823, at *2 (citing *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945)).

overtime wages but allowing claims seeking unpaid straight time compensation to proceed); *Kaur*, 643 F. Supp. 2d at 297 (dismissing portion of common law claim premised on facts underlying the FLSA claim); *see also Wilk v. VIP Health Care Servs., Inc.*, No. 10 CIV. 5530, 2012 WL 560738, at *4 (E.D.N.Y. Feb. 21, 2012) (allowing breach of contract claim to go forward at motion to dismiss stage, given that complaint was not clear whether that claim sought both overtime and straight time). When considering whether the statutory claims and the common law claims are duplicative, the courts analyze "whether the FLSA and common law claims are grounded in the same facts." *Chen v. Street Beat Sportswear, Inc.,* 364 F. Supp. 2d 269, 292–293 (E.D.N.Y. 2005).

Based on the Amended Complaint and Ethelberth's pleadings, it is possible to construe Ethelberth's common law claims as seeking wages for both overtime and straight time.[21] Ethelberth's breach of contract claim (Count One) generally seeks the payment of "wages due and owing to [Ethelberth]." (Am. Compl., ¶ 31). Ethelberth's unjust enrichment claim (Count Five) explicitly seeks "wages and overtime pay for services rendered by Plaintiff to Defendants." (Am. Compl., ¶ 68). To the extent Ethelberth's common law claims seek recovery of overtime wages, such claims are premised on the same facts underlying Counts Three and Four of the Amended Complaint, which plead causes of action for overtime wages under the NYLL and FLSA respectively. Thus, Ethelberth's common law claims seeking recovery of overtime compensation are dismissed as duplicative. *See Chen*, 364 F. Supp. 2d at 293 (finding plaintiffs'

---

[21] It bears repeating that, contrary to the language of the Amended Complaint, Ethelberth is not seeking both unpaid straight wages and overtime pay in his NYLL or FLSA causes of action; rather, Ethelberth is only seeking overtime pay, pursuant to NYLL § 650 *et seq*., in Count Three, and overtime pay, pursuant to the FLSA, in Count Four. The Court construes Count Two as seeking straight time wages, pursuant to NYLL § 220, based on Ethelberth's citation of that provision.

negligence claim to be premised on the same facts of their FLSA claim and therefore dismissing the negligence claims as duplicative).[22]

However, Ethelberth's common law claims seeking recovery of straight time compensation remain viable. Ethelberth argues that Defendants failed to pay him the prevailing minimum wage rate under NYLL § 220 at certain SCA project sites, and that this was done in breach of an agreement between the parties. (Pl. MSJ Memo at ECF 14–15).[23] The facts at issue with regard to Ethelberth's straight time compensation thus differ from those underlying his claims for overtime. *See Kaur*, 643 F. Supp. 2d at 297 (finding plaintiffs' claim for fraud not premised on the same facts as the FLSA claim and therefore not duplicative). Because Counts Three and Four of the Amended Complaint seek recovery of overtime compensation only and because Count Two of the Amended Complaint seeking straight time wages has been dismissed, Ethelberth's common law claims are not duplicative of any other surviving statutory claims.

---

[22]    Ethelberth argues that he may maintain arguments in the alternative, but the Court notes that its grant of summary judgment in Ethelberth's favor with respect to Defendants' liability for overtime compensation under the NYLL makes the need to maintain claims in the alternative moot. *See Kaur*, 643 F. Supp. 2d at 297 (allowing plaintiffs to maintain common law claims in the alternative to the FLSA claim because "those claims would only be adjudicated if the FLSA and contract claims were dismissed and there was no adequate remedy at law.").

[23]    The dismissal of Ethelberth's NYLL claim for straight time wages in Count Two, due to his failure to exhaust administrative remedies, does not bar him from recovering unpaid prevailing rate wages under a breach of contract theory, so long as he pleads his breach of contract claim as a third-party beneficiary of Choice's contract with New York City. *See, e.g.*, *Sobczak v. AWL Industries, Inc.*, 540 F. Supp. 2d 534, 360–61 (E.D.N.Y. 2007) (noting that in contrast to federal law, New York's prevailing rate wage laws were not intended to require resolution of a plaintiff's wage claims exclusively through the administrative process and thus do not bar recovery to a plaintiff who has failed to comply with the law's administrative procedures; such a plaintiff may seek to recover unpaid prevailing rate wages by suing as a third-party beneficiary of a state prevailing wage contract.)

B.    Breach of Contract

Ethelberth, however, cannot maintain his breach of contract claim, even as limited to straight time compensation.  Ethelberth claims that he had an oral agreement with Defendants to be paid the prevailing wage rate when he worked at schools (Ethelberth Aff., ¶ 4), and that Defendants' failure to pay him at such rates breached this agreement.  In addition to denying that such an agreement existed (Defs. 56.1, ¶ 25), Defendants argue that Ethelberth cannot pursue a breach of contract claim that is premised on a violation of the NYLL.  (Defs. MSJ Memo at ECF 10).

The Court examines whether the relevant NYLL provisions bar recovery pursuant to a breach of contract theory.  By alleging an agreement for payment based on "prevailing wage rates," Ethelberth's breach of contract claim is clearly premised on a violation of the prevailing wage provisions set forth in NYLL § 220.   While NYLL § 220 requires exhaustion of administrative remedies prior to pursuing a private right of action under the NYLL, it does not foreclose a plaintiff's ability to pursue a remedy via the common law.  In New York, employees "are permitted to pursue their claims under the administrative procedures provided therein *or* as third-party beneficiaries to the state funded contracts."  *Eldred v. Comforce Corp.*, No. 08-CV-1171, 2010 WL 812698, at *7 (N.D.N.Y. Mar. 2, 2010) (citing cases) (emphasis added); *see also Hapanowicz v. Alexandria Tile Co.*, No. 11-CV-127, 2014 WL 1311441, at *6 (E.D.N.Y. Mar. 31, 2014) (finding plaintiffs were not required to exhaust the NYLL § 220 administrative process because they could pursue "a common law breach of contract claim as the intended third-party beneficiary of a public works contract"); *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 361 (E.D.N.Y. 2007) ("New York law permits parallel remedies, allowing employees to pursue either

administrative claims under, or sue as third-party beneficiaries of, state prevailing wage contracts.").

However, the cases make clear that the alternative common law remedy is as a *third-party beneficiary* to a public contract, not any agreement between the employee and the employer. *See Hapanowicz*, 2014 WL 1311441 at *6 (recognizing common law cause of action as third-party beneficiary); *Sobczak*, 540 F. Supp. 2d at 361 (same).[24] Here, Ethelberth proceeds on the basis of an alleged agreement between himself and Choice. (Pl. 56.1, ¶¶ 31–33). The Amended Complaint does not allege, and offers no evidence to show, that he is a third-party beneficiary to Choice's SCA contracts. *See State of California Public Employees' Retirement System v. Shearman & Sterling*, 95 N.Y.2d 247, 259 (N.Y. 2000) (noting a party asserting rights as a third-party beneficiary must establish "(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost.").

Rather, Ethelberth asserts that Defendants "breached their contractual obligations to Plaintiff." (Am. Compl., ¶¶ 28–32). Accordingly, absent proof that he was a third-party beneficiary to Choice's SCA contracts with the City, Ethelberth cannot prevail on his breach of contract claim for unpaid wages.[25]

---

[24]   Ethelberth cites to *Stennett v. Moveway Transfer & Storage, Inc.*, 97 A.D.3d 655, 656–57 (2012), but that case is also clear that the plaintiff's common law cause of action is as a third-party beneficiary.

[25]   Indeed, because Ethelberth failed to either pursue the administrative process or assert a breach of contract claim as a third-party beneficiary, he is left without recourse as to his prevailing wage claim under New York law. *See Eldred*, 2010 WL 812698 at *7 (finding plaintiff properly brought claim as a third-party beneficiary, "thus obviating the need to comply" with the administrative scheme set forth in NYLL § 220); *Samborski v. Linear Abatement Corp.*, No. 96-CV-1405, 1998 WL 474069 (S.D.N.Y. Aug. 10, 1998) (dismissing plaintiffs' labor law

The Court thus grants summary judgment to Defendants on Plaintiff's breach of contract claim, and dismisses Count One from the Amended Complaint.

## C. Unjust Enrichment

Having limited Ethelberth's claim for unjust enrichment to his straight time compensation only, the Court examines whether any disputed issues of fact preclude judgment as to Defendants' liability for unjust enrichment with respect to this claim.[26]

"To prevail on a claim of unjust enrichment, a plaintiff must establish that: (1) the defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances are such that equity and good conscience require restitution." *Bongat v. Fairview Nursing Care Ctr., Inc.*, 341 F. Supp. 2d 181, 188 (E.D.N.Y. 2004) (citing *Golden Pac. Bancorp v. FDIC,* 273 F.3d 509, 519 (2d Cir. 2001) (applying New York law)). Claims for unjust enrichment seeking monetary, as opposed to equitable, relief are governed by a three-year statute of limitations. *See Matana v. Merkin*, 957 F. Supp. 2d 473, 294 (S.D.N.Y. 2013) (citing *Ingrami v. Rovner*, 847 N.Y.S.2d 132 (N.Y. App. Div. 2007). "The applicable limitations period begins to runs 'upon the occurrence of the wrongful act giving rise to a duty of restitution and not from the time the facts constituting the fraud are discovered.'" *Matana*, 957 F. Supp. 2d at 294 (quoting *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 364 (2d. Cir. 2013)).

---

claims based on plaintiffs' failure to demonstrate that they exhausted administrative remedies pursuant to NYLL § 220).

[26] Ethelberth's unjust enrichment claim is limited to his "straight time" compensation based on the Court's analysis in Section VI.A, but also based on the principle that where there is an adequate remedy at law, a court will not permit a claim in equity. *See Bongat v. Fairview Nursing Care Ctr., Inc.*, 341 F. Supp. 2d 181, 188 (E.D.N.Y. 2004) (citing cases). Here, the Court has previously found an adequate remedy at law for Ethelberth's overtime compensation through his claim under the NYLL. (*See* Section V.B, *supra*.).

Because Ethelberth seeks monetary relief through the recovery of wages, his claim for unjust enrichment is limited to September 28, 2009, three years from the date he filed this action. Ethelberth asserts that during this period, Defendants paid him "a wage rate for work at Schools of $12 to $15.61, while the prevailing wage rate for Plaintiff's experience level was $17.11." (Pl. 56.1, ¶ 53; Pl. Ex. 37). Defendants admit that they are required to pay the mandated minimum wage under the FLSA and the NYLL, but deny that they agreed to pay "any particular wage rate for any particular location." (Defs. 56.1 Opp., ¶ 53).

Given the dispute over the rate at which Ethelberth should have been paid during the relevant time period, the Court cannot definitively determine that Defendants were enriched at Ethelberth's expense. The Court therefore denies summary judgment to both parties on Ethelberth's claim for unjust enrichment.

## VII.    Diversity Jurisdiction

The Court does not address Defendants' argument on diversity jurisdiction at this juncture. (Defs. MSJ Memo at ECF 23–24). Given the denial of summary judgment on Ethelberth's FLSA claim, this Court's exercise of federal question and supplemental jurisdiction over Ethelberth's claims remains proper.

## CONCLUSION

Accordingly, it is hereby ORDERED Plaintiff's and Defendants' cross-motions for summary judgment are GRANTED IN PART and DENIED IN PART. The Court GRANTS summary judgment to Plaintiff with respect to Defendants' liability for payment of overtime compensation pursuant to the NYLL. Plaintiff's claims for overtime compensation pursuant to the FLSA and straight time compensation through unjust enrichment will proceed to trial for fact-finding on the issues identified in this opinion. Plaintiff's claims for unpaid wages pursuant

to Article 6 of the NYLL (Count Two) and breach of contract (Count One) are DISMISSED from this action.

SO ORDERED.


_/s/ Pamela K. Chen_____
Pamela K. Chen
United States District Judge

Dated: Brooklyn, New York
    February 26, 2015