UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
ONYENAEMEKA ETHELBERTH,                          :
                                                 :
                            Plaintiff,           :          **REPORT AND RECOMMENDATION**
                                                 :
              -against-                          :          12 Civ. 4856 (PKC) (VMS)
                                                 :
CHOICE SECURITY COMPANY, CHOICE                  :
GROUP, INC., CHOICE SECURITY SERVICES, :
INC., CHOICE SECURITY SERVICES, CHOICE :
SECURITY CO., and GEORGE OMOGUN (also :
known as OMONUWA OMOGUN, OMONUWA :
GEORGE OMOGUN, and GEORGE O.                     :
OMOGUN),                                         :
                                                 :
                            Defendants.          :
------------------------------------------------------------- x

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Onyenaemeka Ethelberth ("Plaintiff") initiated this suit against his former employer, Defendants Choice Security Company; Choice Group, Inc.; Choice Security Services, Inc.; Choice Security Services; Choice Security Co. (collectively, "Choice"); and Choice's president, George Omogun ("Omogun"), to recover unpaid wages and overtime compensation. The District Court entered a default judgment on liability against Defendants Choice and Omogun, and referred the case to the undersigned for an inquest on damages, costs and reasonable attorney's fees.  See ECF No. 115.

For the reasons set forth below, it is respectfully recommended that the District Court enter judgment for Plaintiff in the amount of **$31,389.01** for compensatory damages; **$150,649.99** in attorney's fees and costs; and **$11,019.13** in **pre-judgment interest**, plus **$5.18 per day** in interest for each day until judgment is entered.

1

I.      **BACKGROUND**

A.      **Procedural Background**

Plaintiff commenced this action against his former employers, Choice, and their

President, Omogun, to recover unpaid wages and overtime compensation under the Fair Labor

Standards Act ("FLSA"), New York Labor Law ("NYLL") and common law, for his work as an

unarmed security guard from December 2007 to June 2010.  See ECF No. 1.  All Defendants

originally appeared through the same counsel.

In February 2015, the District Court granted in part, and denied in part, the Parties'

respective cross-motions for summary judgment.  See generally District Judge Chen's 2/27/2015

Memorandum and Order ("2/27/2015 Order"), ECF No. 97 (dismissing Plaintiff's breach of

contract and NYLL § 220 claims).  In June 2015, the Choice Defendants defaulted after

terminating their counsel and failing to retain replacement counsel by the Court-imposed

deadline.  See ECF No. 103.  Omogun proceeded pro se for a short period of time, but he

subsequently failed to participate in the litigation.  Consequently, in January 2016, District Judge

Chen issued an order: (1) entering default against all Defendants; (2) finding that the Amended

Complaint, accompanied by the voluminous record, "amply supports [the] finding that Plaintiff

has sufficiently pled Defendants' liability as a matter of law" for all claims which survived the

Parties' cross-motions for summary judgment; and (3) referring the matter to the undersigned for

an inquest on damages and costs to which Plaintiff is entitled.  See District Judge Chen's

1/28/2016 Order Entering Default ("1/28/2016 Order"), ECF No. 115, p. 7-8.

Because the default judgment establishes Defendants' liability, see, e.g., Bambu Sales,

Inc. v. OzakTrading Inc., 58 F.3d 849, 854 (2d Cir. 1995), the only issue remaining is a

determination of the damages due to Plaintiff.  See GAKM Res. LLC v. Jaylyn Sales Inc., 08

Civ. 6030 (GEL) (THK), 2009 U.S. Dist. LEXIS 128595, at *4 (S.D.N.Y. July 20, 2009) ("A default judgment that is entered on the well-pleaded allegations in a complaint establishes a defendant's liability, and the sole issue that remains before the court is whether the plaintiff has provided adequate support for the relief it seeks.") (citations omitted).  The Second Circuit has held that an inquest into damages may be held on the basis of documentary evidence alone, "as long as [the court has] ensured that there was a basis for the damages specified in [the] default judgment."  Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989).

At District Judge Chen's direction, see 1/28/2016 Order, ECF No. 115, p. 8, Plaintiff submitted "Proposed Findings of Fact and Law" supported by affidavits and documentary evidence, see Proposed Findings of Fact and Law ("Prop. Find."), ECF No. 118-1.  As these submissions provide a sufficient basis for an award of damages, no evidentiary hearing is required.  Fustok, 873 F.2d at 40.  The finding of facts herein are based on the admissible evidence regarding damages in Plaintiff's submissions, unless otherwise noted.

**B.      Factual Background Regarding Plaintiff's Work As An Employee Of Defendants[1]**

Choice provides unarmed security guards to, inter alia, public construction projects by the New York City School Construction Authority ("SCA sites") and private sites, such as real estate developments and fast-food restaurants ("non-SCA sites").  Omogun is the president of Choice.

Plaintiff was employed by Defendants from December 10, 2007, through June 6, 2010. See Prop. Find., ECF No. 118-1 ¶ 66; see also Declaration of Kenneth Goldberg ("Goldberg Decl."), ECF No. 119 ¶ 37, Exs. 19, 49.  Plaintiff's duties included patrolling the job site, checking visitors' identification, safeguarding the equipment stored on site, and alerting the

---

[1]      Facts in this section which are not followed by a citation are drawn from District Judge Chen's 2/27/2015 Memorandum and Order, which were found by the District Court to be undisputed and supported by admissible evidence.  See ECF No. 97, p. 4-8.

police to incidents that occurred at the site.  He performed these duties at both SCA job sites and non-SCA job sites.

Plaintiff generally worked up to 40 hours per week at SCA sites.  Id. ¶ 68.  Choice's records of Plaintiff's dates and hours worked at such sites included daily sign-out logs.  Id. Choice paid Plaintiff on an hourly basis, although the wages he received fluctuated.  Id. ¶ 99. Choice orally agreed to pay Plaintiff at prevailing wage rates, but the pay he received for work at SCA sites was often lower than the agreed-upon prevailing wage.  Id. ¶ 88.

Plaintiff received his pay for his work at SCA sites through Choice's payroll vendor, Paychex, on a bi-weekly basis and received a W-2 form for each year of his employment.  See Prop. Find., ECF No. 118-1 ¶ 70.  Plaintiff's bi-weekly paycheck through Paychex never accounted for more than 80 hours over a two-week period, despite the fact that he routinely worked more than 80 hours bi-weekly.  Id. ¶ 71; Goldberg Decl., ECF No. 119 ¶ 37, Ex. 10 ¶¶ 5-6.

In addition to working at SCA sites, Plaintiff worked additional weekly hours at non-SCA sites.  Id. ¶ 71.  Choice's records of such work included office timesheets ("Timesheets"), which purported to list the dates and hours employees worked, but it did not list any rates of pay. Id.

Generally speaking, Choice produced incomplete records of Plaintiff's wages and hours. Id. ¶ 72.  According to Plaintiff, though, his work schedule was as follows: from January 2008 through August 2008, Plaintiff worked sixty (60) hours per work at SCA sites, and twenty-four (24) hours per work at non-SCA sites; and from September 2008 through June 2010, Plaintiff worked forty (40) hours per week at SCA sites, and twenty-four (24) hours per work at non-SCA sites.  See Goldberg Decl., ECF No. 119 ¶ 37, Ex. 10 ¶¶ 5-6.

Choice never paid Plaintiff wages at one and one-half times his normal wage rate for hours he worked above and beyond 40 hours a week, which generally occurred at non-SCA sites, but also included some SCA sites.  Id. ¶ 73.

### C.    Claims Remaining On Which Damages Must Be Determined

Plaintiff's Amended Complaint, which is the operative pleading, originally contained five causes of action: (1) breach of contract under common law; (2) unpaid straight wages claim under NYLL § 220; (3) overtime wages claim under NYLL § 650; (4) overtime wages claim under the FLSA; and (5) unjust enrichment under common law.  See generally Amended Complaint, ECF No. 17.

Following summary judgment, three claims remain, and with Defendants' subsequent default, the District Court found in Plaintiff's favor on each as a matter of law: (1) overtime wages claim under NYLL § 650; (2) overtime wages claim under the FLSA; and (3) unjust enrichment under common law.  See generally 2/27/2015 Order, ECF No. 97; 1/28/2016 Order, ECF No. 115.

Pursuant to the FLSA and the NYLL, Plaintiff seeks from Defendants unpaid overtime compensation, related liquidated damages, reasonable attorney's fees, costs and expenses, and pre-judgment interest.  Under the common law alone, Plaintiff seeks unpaid straight time wages at prevailing wage rates.

## II.    LAW RELEVANT TO DAMAGES CALCULATIONS

Before calculating Plaintiff's damages corresponding to Defendants' liability under the FLSA, NYLL and common law, some common questions must be resolved.

### A.    Limitations Periods Pursuant To The FLSA, NYLL And Common Law

"The statute of limitations under the FLSA is two years, 'except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.'" Rosario v. Valentine Ave. Discount Store, Co., 828 F. Supp. 2d 508, 519 (E.D.N.Y. 2011) (quoting 29 U.S.C. § 255(a)).  Because the District Court determined that Defendants' failure to pay overtime wages was willful, see 1/28/2016 Order, ECF No. 115, p. 8, the three-year limitations period applies.  See Easterly v. Tri-Star Transport Corp., 11 Civ. 6365 (VB), 2014 U.S. Dist. LEXIS 180999, at *10-11 (S.D.N.Y. Jan. 23, 2015) ("[A]s [the p]laintiff alleges that [the defendant in default] committed FLSA violations willfully, . . . the three-year federal period applies.") (collecting cases).  As the original complaint in this matter was filed on September 28, 2012, see ECF No. 1, Plaintiff's FLSA claim, insofar as it accrued before September 28, 2009, is barred by the statute of limitations.

In contrast, the NYLL establishes a six-year limitations period.  See N.Y. Lab. Law §§ 198(3), 663(3); Shiu v. New Peking Taste Inc., 11 Civ. 1175 (NGG) (RLM), 2013 U.S. Dist. LEXIS 185347, at *19-20 (E.D.N.Y. Oct. 24, 2013), adopted by 2014 U.S. Dist. LEXIS 20836 (E.D.N.Y. Feb. 19, 2014).  Therefore, there is no statute of limitations bar to any of Plaintiff's claims under New York law.

Claims for unjust enrichment seeking monetary, as opposed to equitable, relief are governed by a three-year statute of limitations.  See Matana v. Merkin, 957 F. Supp. 2d 473, 494 (S.D.N.Y. 2013) (citing Ingrami v. Rovner, 45 A.D.3d 806, 847 N.Y.S.2d 132 (N.Y. App. Div.

2007)).  Because Plaintiff seeks monetary relief through the recovery of unpaid straight wages, his claim for unjust enrichment is limited to an accrual date of September 28, 2009, three years preceding the date in which he filed this action.

**B.     Liquidated Damages**

Plaintiff seeks liquidated damages under the FLSA.  "Under the FLSA, an employer may be liable for liquidated damages 'in an additional equal amount' to the amount owed for 'unpaid minimum wages, or . . . unpaid overtime compensation.'"  Begum v. Ariba Discount, Inc., 12 Civ. 6620 (DLC), 2015 U.S. Dist. LEXIS 5598, at *4 (S.D.N.Y. Jan. 16, 2015) (quoting 29 U.S.C. § 216(b)); see Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 150 (2d Cir. 2008).  "'[I]f the employer shows . . . that the act or omission giving rise to [FLSA liability] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award [a lesser] amount thereof.'"  Begum, 2015 U.S. Dist. LEXIS 5598 at *5 (quoting 29 U.S.C. § 260).  "The employer's burden is 'a difficult one,' and 'double damages are the norm and single damages the exception.'"  Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 316 (S.D.N.Y. 2011) (quoting & citing Barfield, 537 F.3d at 150).   The purpose of FLSA liquidated damages is "compensatory rather than punitive."  Reich v. S. New Eng. Telecoms. Corp., 121 F.3d 58, 71 (2d Cir. 1997).  The damages are meant to compensate the employee for the delay in receiving the wages due.  See Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 261-62 (S.D.N.Y. 2008).

In addition to liquidated damages under the FLSA, Plaintiff seeks liquidated damages under the NYLL.  On April 9, 2011, the NYLL was amended to provide the same assessment of liquidated damages as the FLSA.  Chenensky v. N.Y. Life Ins. Co., 07 Civ. 11504 (WHP), 2012

U.S. Dist. LEXIS 8986, at *6-7 (S.D.N.Y. Jan. 10, 2012).  Whereas liquidated damages were formerly calculated at 25% of all unpaid wages, as of April 2011, they are now calculated at 100%.  N.Y. Lab. Law § 198(1-a).  Prior to the amendment, in order to receive liquidated damages under the NYLL, a plaintiff had the burden to establish that the employer's under-payments were done "willfully."  Now, however, employees may recover liquidated damages of 100% of wages owed unless "the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law."  N.Y. Lab. Law § 198(1-a); see Chenensky, 2012 U.S. Dist. LEXIS 8986, at *7.  Thus, like the FLSA, the NYLL now shifts the burden to the employer to avoid liability for liquidated damages.  Id.

Courts in the Second Circuit are divided over whether a plaintiff may simultaneously recover liquidated damages under both the FLSA and the NYLL.  See, e.g., Lopez v. A. Napco & Son Inc., 35 F. Supp. 3d 298, 299 (E.D.N.Y. 2014).  Several older cases have found that an employee may recover liquidated damages under both statutes because the statutes serve different purposes.  To wit, they reason that the purpose of liquidated damages under the FLSA is to provide "compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA," United States v. Sabhnani, 599 F.3d 215, 260 (2d Cir. 2010) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999)), while the purpose of liquidated damages under the NYLL is "to deter an employer's willful withholding of wages due," Reilly v. Natwest Markets Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999).  Endorsing this distinction, many courts have found that a plaintiff may simultaneously recover liquidated damages under both statutes.  See, e.g., Ni v. Bat-Yam Food Servs. Inc., 13 Civ. 7274 (ALC) (JCF), 2016 U.S. Dist. LEXIS 7782, at *6 (S.D.N.Y. Jan. 27, 2016) (noting that, while courts in the Second Circuit are divided on the issue of cumulative liquidated

damages, "allowing recovery under both statutes appears to be the majority approach") (internal quotations omitted); Melgadejo v. S & D Fruits & Vegetables Inc., 12 Civ. 6852 (RAH) (BP), 2015 U.S. Dist. LEXIS 145484, at *41 (S.D.N.Y. Oct. 23, 2015), adopted by 2016 U.S. Dist. LEXIS 16346 (S.D.N.Y. Feb. 9, 2016) ("I shall follow the majority view and conclude that plaintiffs may recover liquidated damages under both the FLSA and NYLL."); Team Castle Hill Corp., 13 Civ. 8382 (PAC), 2015 U.S. Dist. LEXIS 27420, at *8 (S.D.N.Y. Mar. 5, 2015) ("While a split of authority exists on whether a plaintiff may recover liquidated damages under both the FLSA and the NYLL for the same violations during the same time period, the majority of courts in the Second Circuit allow for the simultaneous recovery of both forms of liquidated damages.") (internal quotation marks & citations omitted); Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 91 (E.D.N.Y. 2012) (recommending an award of liquidated damages under both statutes because the Court was "persuaded that the two statutory provisions serve different purposes and are therefore not mutually exclusive").  Recent decisions, however, have departed from this view reasoning, in part, that "'the distinction between compensatory and punitive for characterizing liquidated damages under the FLSA and NYLL [is] semantic, exalting form over substance,'" Inclan v. New York Hosp. Grp., Inc., 95 F. Supp. 3d 490, 506 (S.D.N.Y. 2015) (quoting Gortat v. Capala Bros., 949 F. Supp. 2d 374, 381 (E.D.N.Y. 2013)), as "[b]oth forms of damages seek to deter wage-and-hour violations in a manner calculated to compensate the party harmed," Chuchuca v. Creative Customs Cabinets, Inc., 13 Civ. 2506 (RLM), 2014 U.S. Dist. LEXIS 164846, at *46 (E.D.N.Y. Nov. 25, 2014).

I find the more recent view—that is, Plaintiff may only recover liquidated damages under one of the FLSA or NYLL—more persuasive.  A conclusion otherwise effectively sanctions a "judge-created treble damages remedy" that neither legislature—Congress or New York—

appears to have envisioned.[2]  Yun Hong Hua v. Eight Star Inc., 15 Civ. 275 (BMC), 2015 U.S.

Dist. LEXIS 64062 at *8 (E.D.N.Y. May 15, 2015); see Castillo v. RV Transp., Inc., 15 Civ. 527

(LGS) (JCF), 2016 U.S. Dist. LEXIS 48503, at *5-6 (S.D.N.Y. Apr. 11, 2016) ("Nothing in

either [the FLSA or the NYLL] suggests that the legislators envisioned or intended that

successful plaintiffs would reap what in effect are three times their damages, rather than double

their damages as the statutes explicitly provide."); Perez v. Queens Boro Yang Cleaner, Inc., 14

Civ. 7310 (SJ) (JO), 2016 U.S. Dist. LEXIS 35587, at *20 (E.D.N.Y. Mar. 17, 2016), adopted by

2016 U.S. Dist. LEXIS 45862 (E.D.N.Y. Apr. 5, 2016) (permitting liquidated damages under the

FLSA and NYLL "would have the effect of granting a prevailing plaintiff treble damages (in

---

[2]     In considering the 2011 legislative amendments to the NYLL, which render the
liquidated damages provision nearly identical to its FLSA counterpart and were enacted after
Plaintiff's period of employment, one court observed that, "[e]ven assuming there were once a
plausibly substantive distinction between liquidated damages under the FLSA and NYLL, the
recent amendments to the NYLL have undermined the basis for such a distinction."  Inclan, 95 F.
Supp. 3d at 506; see Cabrera v. Dream Team Tavern Corp., 12 Civ. 6323 (ADS), 2016 U.S. Dist.
LEXIS 57446, at *7 (E.D.N.Y. Apr. 29, 2016) ("[T]he purported distinction in purpose between
the liquidated damages provisions is largely semantic and totally undermined by the 20[11]
amendments to the NYLL.").  "[W]ith the elimination of the willfulness requirement and the
increase in the liquidated damages percentage . . . the NYLL liquidated damages provision is
identical to the FLSA's provision, and it becomes difficult to accept that it is designed to serve a
different purpose from the FLSA's provision."  Animas v. Balcon Quiteno Inc., 14 Civ. 3763
(CBA) (VVP), 2015 U.S. Dist. LEXIS 177666, at *16-17 (E.D.N.Y. Sept. 14, 2015), adopted by
2016 U.S. Dist. LEXIS 42275 (E.D.N.Y. Mar. 30, 2016); see Gunawan, 897 F. Supp. 2d at 91
n.11 ("To the extent the federal and state statutes now provide for essentially identical remedies
with respect to liquidated damages, it is harder to argue that they are designed to compensate a
plaintiff for disparate harms.").  Although these cases discuss a change in the NYLL that post-
dates the period of Plaintiff's claims, the change in the law does show that the New York State
legislature did not recognize any meaningful distinction between the FLSA and the NYLL on the
issue, suggesting that no such distinction ever existed.  This Court's review of the legislative
history of the 2011 amendment did not otherwise reveal any reference to a distinction in the
purpose of the FLSA and NYLL's respective liquidated damages provisions.

addition to other remedies) as a remedy for wage law violations—a windfall that neither the state nor the federal legislature appears explicitly to have intended").[3]

As District Judge Spatt concisely explained:

> [The Court] sees no practical reason why a plaintiff should not be able to recover his single overtime wages under both statutes . . . but should then be permitted to recover liquidated damages under both statutes.  If he is not entitled to double recovery of his overtime wages, why then should he be entitled to double-recovery of liquidated damages?
>
> Divining different purposes from the [FLSA and NYLL] statutes is a speculative answer to that question at best.  And, without any particular language in the statutes speaking to this question, or any Second Circuit authority directly addressing it, the Court is not inclined to permit the Plaintiff to recover four times the amount of his overtime wages in liquidated damages.  One award of liquidated damages is sufficient to compensate the Plaintiff for delay in receiving his overtime and to deter the Defendants from future wage and hour violations.

Cabrera, 2016 U.S. Dist. LEXIS 57446 , at *7-8 (citing Lopez v. Ploy Dee, Inc., 15 Civ. 647 (AJN), 2016 U.S. Dist. LEXIS 53339, at *4-5 n.1 (S.D.N.Y. Apr. 21, 2016) ("[T]here is persuasive authority in this circuit holding that FLSA plaintiffs cannot 'double recover' liquidated damages under both statutes.")); see Animas, 2015 U.S. Dist. LEXIS 177666, at *16

---

[3]     See Courts Shy Away From Treble Damages in Wage, Hour Suits, N.Y. Law Journal, Feb. 29, 2016 ("Over the past several years, the courts have reversed course from the initial bevy of federal and state court decisions applying 200 percent liquidated damages.  Countless applications seeking 200 percent liquidated damages have since been denied by numerous judges who find such recoveries to be duplicative and unnecessary.  These courts continue to reason that both forms of damages seek to deter wage-and-hour violations in a manner calculated to compensate the plaintiff.  Even judges that still apply both NYLL and FLSA liquidated damages together have noted the recent trend away from granting 200 percent liquidated damages.  In fact, in some instances judges have begun abrogating their own precedent, and now embrace the view that double liquidated damages under both the NYLL and FLSA are inappropriate given the similarities between both statutes.  Today, the prevailing view appears to be that applying liquidated damages remedies under both the NYLL and FLSA results in a windfall that neither the state nor the federal legislature appears explicitly to have intended.") (internal citations, quotation & alterations omitted).

("[T]his court still maintains that rewarding liquidated damages under both the FLSA and NYLL is unwarranted.").[4]

Accordingly, it is respectfully recommended that the District Court **find** that Plaintiff is **not** entitled to simultaneous liquidated damages under both the FLSA and NYLL, but instead, only under whichever statute provides him a greater potential recovery.  See, e.g., Quiroz v. Luigi's Dolceria, Inc., 14 Civ. 871 (VVP), 2016 U.S. Dist. LEXIS 64662, at *21 (E.D.N.Y. May 17, 2016) ("[T]he recent trend has moved away from awarding liquidated damages under both the FLSA and the NYLL, and instead making a single award under the statute that provides the greater recovery.  Continuing to follow that trend, I decline to provide cumulative liquidated damages under both statutes." (citing cases)); Cabrera, 2016 U.S. Dist. LEXIS 57446, at *8.

Here, the District Court has determined that Defendants' failure to pay overtime wages was willful, see 1/28/2016 Order, ECF No. 115, p. 8.  Therefore, as a matter of law, Plaintiff has proved that Defendants underpayment of wages was willful, see N.Y. Lab. Law § 198(1-a) (McKinney's 2009), and Defendants cannot prove a "good faith basis" for believing that their underpayment of wages to Plaintiff was in compliance with the law, see 29 U.S.C. § 260.  As such, it is respectfully recommended that Plaintiff be **permitted** to recover **liquidated damages under the greater of the FLSA or NYLL**, where both forms of damages are otherwise available for the same violation.  See Chuchuca, 2014 U.S. Dist. LEXIS 164846, at *46 (awarding the greater of FLSA and NYLL liquidated damages where both forms of damages

---

[4]      Of course, in those cases in which a plaintiff can obtain up to six years of compensatory damages, three under the NYLL alone, the plaintiff receives only a single recovery of liquidated damages for the earlier three-year period.  The conclusion that the purposes of the FLSA and NYLL are consistent harmonizes the damages recoverable under the two statute-of-limitations periods.

were otherwise available for the same violation).  These damages are outlined below.  <u>See</u> Section III, <u>infra</u>.

Two additional intricacies affect the calculation of liquidated damages to which Plaintiff is due.  First, as mentioned above, prior to April 2011, liquidated damages under the NYLL were calculated at 25% of all unpaid wages.  <u>See</u> N.Y. Lab. Law § 198(1-a) (McKinney's 2009). Courts have interpreted the amendment to NYLL § 198(1-a) increasing the liquidated damages rate to 100% to not apply retroactively.  <u>See</u> <u>Fermin v. Las Delicias Peruanas Rest., Inc.</u>, 93 F. Supp. 3d 19, 47 (E.D.N.Y. 2015) ("As the 100% liquidated damages amendment has been in effect since April 9, 2011, and it is generally recognized not to be retroactive, any liquidated damages that a plaintiff may be entitled to after this date is calculated at 100% of the amount owed and any recovery before that date shall be calculated at the original 25% amount owed."); <u>Animas</u>, 2015 U.S. Dist. LEXIS 177666, at *15 n.3 ("Courts have generally held that the April 9, 2011 liquidated damages amendment should not be applied retroactively, and therefore any liquidated damages awarded prior to that date are calculated at 25% of the unpaid wages."); <u>Gold v. New York Life Ins. Co.</u>, 730 F.3d 137, 143-44 (2d Cir. 2013) ("Because there is no support for retroactivity in either the text or the legislative history, we hold that the 2011 amendment is not retroactive.").  Therefore, as the entirety of Plaintiff's employment pre-dates the 2011 amendment to the NYLL, any liquidated damages due to Plaintiff under the NYLL will be calculated at a 25%-clip.

Second, Plaintiff's FLSA claim is barred insofar as it accrued prior to September 28, 2009, <u>see</u> Section II(A), <u>supra</u>, such that he will not receive liquidated damages under the FLSA for pre-September 28, 2009 claims.  Instead, Plaintiff will receive liquidated damages under the

NYLL for all damages suffered during his employment that preceded September 28, 2009, that is from December 10, 2007 through September 27, 2009.

In light of the above, it is respectfully recommended that Plaintiff be **permitted** to recover **liquidated damages** under the NYLL at 25% of overtime wages due from December 10, 2007 through September 27, 2009 and under the FLSA at 100% of overtime wages due from September 28, 2009 through June 7, 2010.

C.      **Unjust Enrichment**

With respect to his unjust enrichment claim, Plaintiff seeks unpaid straight time compensation equal to the "prevailing wage" pursuant to NYLL § 220.  NYLL § 220 is contained in Article 8 of the NYLL, which is titled "Public Work."  See NYLL § 220 et seq. NYLL § 220(2) sets forth that contracts with the state, public benefit corporation or municipal corporation (such as Choice's contracts with SCA sites) "shall contain a stipulation that no laborer . . . in the employ of the contractor, subcontractor or other person doing or contracting to do the . . . work contemplated by the contract shall be permitted or required to work more than eight hours in any one calendar day or more than five days in any one week except in cases of extraordinary emergency . . . ."  NYLL § 220(2).  NYLL § 220(3)(a) goes on to provide that the wages to be paid for such work "shall not be less than the prevailing rate of wages as hereinafter defined."

According to the prevailing wage schedules applicable to Plaintiff's time of employment, the prevailing minimum wage under New York law for an unarmed security guard in building services varied, depending on experience, from July 1, 2009 through June 30, 2010 as follows: $15.61 for 0-6 months of experience to $18.21 for more than 24 months of experience.  See N.Y.C. Admin. Code § 6-109; Prevailing Wage Schedule, ECF No. 51, Ex. 37.  As of September

28, 2009—the earliest date on which Plaintiff's unjust enrichment claim can be compensated, see Section II(A), supra—Plaintiff had been employed by Defendants for approximately 20-21 months. See Prop. Find., ECF No. 118-1 ¶ 88 n.3. The published prevailing wage rate for Plaintiff's position (unarmed guard) for 19-24 months' tenure (from September 28, 2009 through December 2009) was $17.11 (base rate of $12.75/hour plus a $4.36/hour benefit rate). Id.; Prevailing Wage Schedule, ECF No. 51, Ex. 37. After approximately 24 months' tenure (January 2010 through June 2010), the applicable wage rate increased to $18.21 (base rate of $13.75/hour plus a $4.46/hour benefit rate). See Prop. Find., ECF No. 118-1 ¶ 88 n.3; Prevailing Wage Schedule, ECF No. 51, Ex. 37.

In light of the above, it is respectfully recommended that Plaintiff be **permitted** to **recover unpaid straight time wages insofar as he was paid below the applicable prevailing wage rates** at the following rates: $17.11 for bi-weekly pay periods between September 28, 2009 through January 3, 2010;[5] and $18.21 for bi-weekly pay periods between January 4, 2010 through June 6, 2010. The amounts owing consist of the difference between these rates and what Plaintiff was paid as set forth below. See Section III, infra; see also Appendix I.

### D. Pre-Judgment Interest

Although it is "well settled" that pre-judgment interest is not awardable under the FLSA, Begum v. Ariba Disc., Inc., 12 Civ. 6620 (DLC), 2015 U.S. Dist. LEXIS 5598, at *6-7 (S.D.N.Y. Jan. 16, 2015), "the NYLL permits the award of both liquidated damages and pre-judgment interest," Fermin, 93 F. Supp. 3d at 38. Under the New York Civil Practice Law and Rules ("N.Y. C.P.L.R."), "[i]nterest shall be at the rate of nine per centum per annum." N.Y.

---

[5] Although, technically, Plaintiff should receive the increased prevailing wages rates as of approximately January 1, 2010, a bi-weekly pay period appears to have ended on January 3, 2010, which allows for clearer calculations. In addition, as per the calculations chart submitted by Plaintiff, he, too, proposes January 3, 2010 as the cut-off date in this regard.

C.P.L.R. § 5004.  Where, as here, unpaid wages are "incurred at various times, interest shall be computed . . . from a single reasonable intermediate date."  N.Y. C.P.L.R. § 5001(b); Coulibaly v. Millennium Super Car Wash, Inc., 12 Civ. 4760 (CBA) (CLP), 2013 U.S. Dist. LEXIS 186210, at *46 (E.D.N.Y. Nov. 13, 2013), adopted by 2013 U.S. Dist. LEXIS 161860 (E.D.N.Y. Nov. 13, 2013).  A common date is "[t]he median date between the earliest ascertainable date the cause of action existed and the date the action was filed . . . ."  Gunawan, 897 F. Supp. 2d at 93. Courts have discretion in choosing a reasonable date from which to calculate pre-judgment interest.  See Fermin, 93 F. Supp. 3d at 49 ("Courts applying N.Y. C.P.L.R. § 5001 have wide discretion in determining a reasonable date from which to award pre-judgment interest . . . .") (quotation omitted).

Here, Plaintiff's employment with Choice began on December 10, 2007, and the original complaint was filed on September 28, 2012.  The mid-point between those two dates is approximately May 5, 2010.

The overtime wages due under the NYLL is $19,173.72.  See Section III, infra.  The Court calculates pre-judgment interest on this amount at a rate of 9% per year as $10,197.88.  As the unpaid overtime wages remain outstanding, daily interest shall continue to accrue at the rate of $4.73 per day for each day until judgment is entered.[6]

Similarly, Plaintiff is due pre-judgment interest on his common law claim of unjust enrichment.  See Marini v. Adamo, 995 F. Supp. 2d 155, 208 (E.D.N.Y. 2014) ("On plaintiffs' state law claims, the Court must apply New York's statutory rate of pre-judgment interest of

---

[6]     These figures were reached by taking the number of days between the mid-point selected, May 5, 2010, and the date on which Plaintiff filed his motion for default judgment, March 30, 2016 (2,156 days), and multiplying it by the daily interest rate of $4.73 ($19,173.72 [OT wages owed] x 0.09 [yearly interest rate] = $1,725.63 [yearly interest] / 365 days = $4.73 per day interest).

9%."); <u>Action S.A. v. Marc Rich & Co.</u>, 951 F.2d 504, 508 (2d Cir. 1991) (citing N.Y. C.P.L.R. § 5001 and reversing district court for failing to apply New York's statutory rate of pre-judgment interest on claims of breach of fiduciary duty and unjust enrichment); <u>Huang v. Sy</u>, 859 N.Y.S.2d 903 (Queens Sup. 2008) ("Causes of action such as fraud, breach of fiduciary duty[,] conversion and unjust enrichment qualify for the recovery of prejudgment interest under [N.Y. C.P.L.R. § 5001].”), <u>aff'd</u>, 62 A.D.3d 660 (2d Dep't 2009).

Here, the earliest date Plaintiff's unjust enrichment claim could have accrued was September 28, 2009, <u>see</u> Section II(A), <u>supra,</u> and the original complaint was filed on September 28, 2012. The mid-point between those two dates is approximately March 30, 2011.

The wages due under Plaintiff's unjust enrichment claim is $1,842.40. The Court calculates pre-judgment interest on this amount at a rate of 9% per year as $821.25. As the unpaid wages remain outstanding, daily interest shall continue to accrue at the rate of $0.45 per day for each day until judgment is entered.[7]

In total, I respectfully recommend that the District Court order Defendants to pay Plaintiff **$11,019.13** in **pre-judgment interest** ($10,197.88 + $821.25) and $5.18 per day ($4.73 + $0.45) for each day until judgment is entered.

---

[7]      These figures were reached by taking the number of days between the mid-point selected, March 30, 2011, and the date on which Plaintiff filed his motion for default judgment, March 30, 2016 (1,825 days), and multiplying it by the daily interest rate of $0.45 ($1,842.40 [unjust enrichment damages owed] x 0.09 [yearly interest rate] = $165.82 [yearly interest] / 365 days = $0.45 per day interest).

## III.    DAMAGES CALCULATIONS

The calculations relevant to Plaintiff's damages are provided in Appendix I.[8]

In order to fully understand the calculation of Plaintiff's damages, as determined by the Court and calculated in Appendix I, several parameters must be explained.

Plaintiff worked for Choice and Omogun for nearly two and one-half years; despite Plaintiff's diligence during discovery, Defendants produced incomplete records of Plaintiff's wages and hours.  See Prop. Find., ECF No. 118-1 ¶ 72.  Accordingly, where paystubs, daily sign-out logs or timesheets did not provide a complete picture of the hours that Plaintiff worked on a bi-weekly basis, Plaintiff's supporting affidavit—in which he provided his work schedule, see Goldberg Decl., ECF No. 119, ¶ 37, Ex. 10 ¶ 5-6—fills in the missing periods.  See, e.g., Appendix I, 9/14/09 – 9/27/09.  Many of these bi-weekly periods were grouped together for purposes of simplicity, and at Plaintiff's request.  See, e.g., Appendix I, 9/1/08 – 12/7/08; see also Goldberg Decl., ECF No. 119 ¶ 39, Ex. 9.

In certain circumstances, even though the number of hours Plaintiff worked in a given bi-weekly period could be calculated, whether via documentation or Plaintiff's affidavit, Plaintiff's straight time and overtime wage rates were only partially documented.  When such was the case, and because Plaintiff's wage rates fluctuated, see Prop. Find., ECF No. 118-1 ¶ 69, the Court utilized a weighted average of the documented rates in order to calculate the wages owed for the hours worked in which rates were undocumented.  See, e.g., Appendix I, 12/10/07 – 8/17/08.  Along the same vein, where there existed a single, bi-weekly period in which Plaintiff's hours

---

[8]      Plaintiff may not recover for unpaid overtime wages under both statutes.  See Pinzon v. Paul Lent Mech. Sys. Inc., 11 Civ. 3384 (DRH) (WDW), 2012 U.S. Dist. LEXIS 134122, at *9 (E.D.N.Y. Aug. 21, 2012), adopted by 2012 U.S. Dist. LEXIS 134125 (E.D.N.Y. Sept. 19, 2012) (the plaintiff may "not double dip" or obtain a "double recovery" of unpaid overtime wages under the FLSA and the NYLL).

were documented, but the wages in which he was paid during that period were undocumented, the Court applied a weighted average[9] of the prior and subsequent week's pay rate. See, e.g., Appendix I, 5/25/09 – 6/7/09.

Next, where bi-weekly periods were grouped together, but the wages in which Plaintiff was paid during those periods were undocumented, the Court used either the applicable minimum wage rate required under the FLSA, see 29 U.S.C. § 206(a)(1), or the applicable prevailing wage rate, whichever resulted in a lower damages award for that period.[10] See, e.g., Appendix I, 4/13/09 – 8/16/09.

Finally, with regard to Plaintiff's unjust enrichment claim, Plaintiff seeks to recover the difference between the straight time wages he was paid and the prevailing wage rates Plaintiff claims Defendants agreed to pay him. As mentioned earlier, Plaintiff's unjust enrichment claim,

---

[9]     A weighted average is an average resulting from the multiplication of each component by a factor reflecting its importance. For example, in the bi-weekly pay period which ended on May 24, 2016, Plaintiff worked 96 hours in total and was paid at two different rates; he was paid $8.00 per hour for 48 hours worked and $10.00 per hour for an additional 48 hours worked. The weighted average of these pay rates is $9.00 per hour ((($8 * 48 hours) + ($10 * 48 hours)) / 96 total hours).

[10]     There are two competing concerns on which this decision was based. Plaintiff has adequately supported, via his affidavit, his claim that he worked during the relevant time periods. Bearing in mind his constantly fluctuating wage rates, which seemingly varied without reason, the Court does not believe that the lack of substantiating documentation and/or Plaintiff's apparent inability to recall his specific wage rates for each respective week should prevent him from being awarded his unpaid wages. On the other hand, Plaintiff's affidavit does not contain even an estimation of the wages he received during these "grouped" periods, and the calculations chart submitted by Plaintiff, see Goldberg Decl., ECF No. 119, ¶ 37, Ex. 9, inserts wage rates for these bi-weekly pay periods for which there appears to be no evidentiary support. As Plaintiff grouped various bi-weekly pay periods together, see id., they were not easily susceptible to calculating average rates in any logically temporal manner. Although Plaintiff should be paid for his unpaid overtime work, the Court does not believe that he is entitled to an assumption that he received the highest wages rates he may have otherwise received during other documented weeks—as Plaintiff appears to have utilized in his calculations chart—which could result in Plaintiff reaping an unwarranted windfall. As a result, the Court applied the rates of pay in which Defendants were legally obligated to provide Plaintiff, but which resulted in the lowest award, depending on the relevant calculations.

insofar as it accrued prior to September 28, 2009, is time-barred.  Accordingly, using September 28, 2009 as a starting point, the Court calculated the damages owed to Plaintiff in this regard by awarding him the difference—to the extent one existed—between the straight time wages he was actually paid and the prevailing wage rate he was rightfully owed, as determined by his experience level and the prevailing wage schedule.  See N.Y.C. Admin. Code § 6-109; Prevailing Wage Schedule, ECF No. 51, Exhibit 37.

In light of the above, I respectfully recommend that Defendants be **ordered** to pay Plaintiff **$1,842.40** for unpaid minimum wages for hours worked up to forty hours per week in which he was not paid the prevailing minimum wage; **$10,372.89** in liquidated damages; and **$19,173.72** for unpaid overtime premium pay for hours worked in excess of forty hours per week.[11]  This damages amount totals **$31,389.01**.

## IV.    ATTORNEY'S FEES AND COSTS

In addition to damages, Plaintiff requests that the Court award attorney's fees and costs.

### A.    Attorney's Fees

The FLSA and NYLL allow for an award of "reasonable" attorney's fees.  See 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).  The standard method for determining the amount of reasonable attorney's fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  This calculation, known as the "lodestar" method, "provides an objective basis on which to make an initial estimate of the value of a lawyer's services."  Id.

---

[11]    This figure was reached by adding the liquidated damages due under the NYLL for overtime wages owed for work completed between December 10, 2007 through September 27, 2009 and the liquidated damages due under the FLSA for overtime wages due for work completed from September 28, 2009 through June 7, 2010 (($11,734.44 [OT wages due between 12/10/07 – 9/27/09] * 25% [NYLL liquidated damages rate]) + $7,439.28 [OT wages due between 9/28/09 – 6/6/10] * 100% [FLSA liquidated damages rate]).

In reviewing a fee application and calculating a lodestar, the court must "examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case." Santillan v. Henao, 822 F. Supp. 2d 284, 299 (E.D.N.Y. 2011). A reasonable hourly rate is "the rate a paying client would be willing to pay," "bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill Concerned Citizens Neighborhood Ass'n, 522 F.3d 182, 190 (2d Cir. 2008). "If any expenditure of time was unreasonable, the court should exclude these hours from the calculation." Santillan, 822 F. Supp. 2d at 299 (citing Hensley, 461 U.S. at 434; Lunday v. City of Albany, 42 F.3d 131, 133 (2d Cir.1994)). The court should also exclude "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999).

A party seeking attorney's fees bears the burden of supporting its claim of hours expended by accurate, detailed and contemporaneous time records. N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983). These time records must be sufficiently detailed and contemporaneous, "specify[ing], for each attorney[,] the date, the hours expended, and the nature of the work done." King v. JCS Enters., Inc., 325 F. Supp. 2d 162, 166 (E.D.N.Y. 2004) (quoting Carey, 711 F.2d at 1148). "If such records are inadequate the Court may reduce the award accordingly." Santillan, 822 F. Supp. 2d at 299 (quoting Vernon v. Port Auth. of N.Y. & N.J., 220 F. Supp. 2d 223, 229 (S.D.N.Y. 2002)).

### 1.    Reasonable Hourly Rate

In support of his claim for attorney's fees, Plaintiff submits a declaration from Plaintiff's counsel, Kenneth Goldberg, detailing his educational background and legal experience. See Goldberg Decl., ECF No. 119 ¶¶ 43-51. According to his declaration, Mr. Goldberg works for

the law firm of Goldberg & Fliegel LLP ("G&F"), in which he is a partner, id. ¶¶ 43, 52; he has practiced law since 1991 after receiving his law and business degrees from New York University, id. ¶ 43; following law school, he worked for the law firms of O'Melveny & Myers and Mayer Brown & Platt, and he focused his practice on labor and employment law, id. ¶ 43; his current practice at G&F consists of labor and employment law matters, id. ¶ 43; and over the course of his career, he has counsel or represented over 1,000 clients in federal and state proceedings, primarily in labor and employment law matters, id. ¶ 44.  Mr. Goldberg seeks an hourly fee of $400.  Id. ¶ 42.

In assessing the reasonableness of an attorney's hourly rate, the Court must consider whether "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation." I.B. v. N.Y.C. Dep't of Educ., 336 F.3d 79, 80 (2d Cir. 2003) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)).  The "relevant community" is "usually the forum district." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 369 F.3d 91, 96 (2d Cir. 2004).  "It is now well established . . . that the prevailing hourly rate for partners in th[e Eastern D]istrict ranges from $300.00 to $400.00." Hui Luo v. L&S Acupuncture, P.C., 14 Civ. 1003 (BMC), 2015 U.S. Dist. LEXIS 56236, at *3 (E.D.N.Y. Apr. 29, 2015) (citations omitted).

Given Mr. Goldberg's qualifications and approximately twenty-five years of experience litigating employment actions, the Court finds the requested hourly rate reasonable.  See De Ping Song v. 47 Old Country, Inc., 09 Civ. 5566 (LDW) (SIL), 2015 U.S. Dist. LEXIS 177623, at *8 (E.D.N.Y. Oct. 1, 2015), adopted by 2016 U.S. Dist. LEXIS 52277 (E.D.N.Y. Mar. 31, 2016) (awarding attorneys with fifteen and twenty-five years of experience litigating employment actions $400 and $425 per hour, respectively, in FLSA- and NYLL-based matter); Rosendo v.

Everbrighten Inc., 13 Civ. 7256 (JGK) (FM), 2015 U.S. Dist. LEXIS 50323, at *23-24 (S.D.N.Y. Apr. 7, 2015), adopted by 2015 U.S. Dist. LEXIS 98309 (S.D.N.Y. July 27, 2015) (awarding partner at employment law firm with approximately thirty years of experience $400 per hour in FLSA- and NYLL-based matter); Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 51-52 (E.D.N.Y. 2015) (finding $350 per hour to be reasonable for an attorney with sixteen years of experience in FLSA- and NYLL-based matter).  This rate also falls in line with the rate previously awarded to Mr. Goldberg in a 2012 FLSA- and NYLL-based matter in the Southern District of New York.  See Veerman v. Deep Blue Group L.L.C., 08 Civ. 5042 (WHP) (LAB), ECF No. 101, at p. 4 (S.D.N.Y. May 11, 2012) (awarding Mr. Goldberg $400 per hour in FLSA- and NYLL-based matter).

With respect to travel time, Mr. Goldberg seeks compensation at a one-half billing rate of $200 per hour, which this Court also finds reasonable.  See Pennacchio v. Powers, 05 Civ. 985 (RRM) (RML), 2011 U.S. Dist. LEXIS 79279, at *4 (E.D.N.Y. July 21, 2011) ("[I]t is customary in this circuit to reduce attorney's fees by fifty percent for travel time."); Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 151 (2d Cir. 2008) (upholding fee award that included travel time calculated at half usual hourly rate).

### 2.    Reasonable Number Of Hours

Here, Plaintiff seeks attorney's fees for a total of 408 hours of work and 3 hours of travel. In support of his claim for attorney's fees in this regard, Plaintiff submits contemporaneous time records reflecting work completed by Mr. Goldberg on this matter from August 2011 to March 2016.  See Goldberg Decl., ECF No. 119, ¶ 54, Exhibit 14.

Upon review of Mr. Goldberg's time records, the Court is satisfied that they provide sufficient information to assess the reasonableness of Plaintiff's application in this regard.  See

Perdue v. City Univ., 13 F. Supp. 2d 326, 345 (E.D.N.Y. 1998) (requiring that time entries identify the "general subject matter of time expenditures") (internal quotation omitted).

Although, at first glance, the number of hours billed appears significant against the backdrop of this default proceeding, Mr. Goldberg's representation of Plaintiff commenced in 2011, and included, among other things, substantial motion practice, the exchange and review of considerable document discovery, and the preparation of a joint pretrial order.  Nevertheless, based on a careful review of Mr. Goldberg's time records, it appears that he sporadically billed excessive or unnecessary hours for certain tasks he completed.

For example, between December 31, 2012 and January 3, 2013, Mr. Goldberg billed 2.25 hours in order to complete the court's case management plan—a simple, form-fillable document which only required the Parties to insert four dates as proposed discovery deadlines.  See Goldberg Decl., ECF No. 119, Exhibit 14, p. 1.  Likewise, between March 26, 2013 and March 29, 2013, Mr. Goldberg billed 3.75 hours for drafting a motion to amend the complaint and the Amended Complaint, id. p. 3; however, a motion to amend the complaint was unnecessary, as Defendants had stipulated to its filing, and substantively, the Amended Complaint only required the insertion of the Choice Defendants "doing business as" entity names.  See ECF No. 16. Further, Mr. Goldberg billed more than 130 hours to draft Plaintiff's moving and opposition papers with regard to the Parties' cross motions for summary judgment.  See Goldberg Decl., ECF No. 119, Exhibit 14, p. 7-10.  Although not wholly unreasonable, such a high number of hours seem unwarranted in light of Mr. Goldberg's experience and the relatively straightforward nature of Plaintiff's FLSA and NYLL claims.  See Amended Complaint, ECF No. 17; Prop. Find., ECF No. 118-1.

More generally, on numerous occasions, Mr. Goldberg billed for performing clerical and administrative tasks, such as serving and filing documents, see generally Goldberg Decl., ECF No. 119, Exhibit 14, which are not ordinarily recoverable at an attorney's rate.[12]  See DeMarco v. Ben Krupinski Gen. Contractor, Inc., 12 Civ. 573 (SJF) (ARL), 2014 U.S. Dist. LEXIS 100793, at *29 (E.D.N.Y. July 22, 2014) (reducing award to account for "time spent on clerical tasks, such as faxing documents, preparing duplicates, serving papers on defendants, and filing documents"); Top Banana, L.L.C. v. Dom's Wholesale & Retail Ctr., Inc., 04 Civ. 2666 (GBD) (AJP), 2008 U.S. Dist. LEXIS 95721, at *10 (S.D.N.Y. Nov. 10, 2008) (ordering 5% reduction to take into account attorney hours billed for performing paralegal-type work).

Finally, Mr. Goldberg recorded time in quarter-hour increments, rather than the typically utilized six-minute increments, which some courts have found "tends substantially to overstate the amount of time spent . . . [and] adds an upward bias in virtually all cases."  Lucky Brand Dungarees, Inc. v. Ally Apparel Res., LLC, 05 Civ. 6757 (LTS) (MHD), 2009 U.S. Dist. LEXIS 31940, at *13 (S.D.N.Y. Feb. 25, 2009); see Trs. v. Bradley Funeral Serv., 11 Civ. 2885 (ARR) (RLM), 2012 U.S. Dist. LEXIS 126907, at *17 (E.D.N.Y. Aug. 10, 2012), adopted by 2012 U.S. Dist. LEXIS 126883 (E.D.N.Y. Sept. 4, 2012) ("[P]laintiff's counsel's method of billing tends to overstate the amount of time expended, since the firm divides the billed hours into fifteen-minute increments instead of the preferred six-minute increments."); LaBarbera v. Pass 1234 Trucking, Inc., 04 Civ. 1364 (SJ) (MDG), 2007 U.S. Dist. LEXIS 103600, at *18 (E.D.N.Y. Sept. 4, 2007), adopted by 2007 U.S. Dist. LEXIS 74458 (E.D.N.Y. Sept. 28, 2007) (reducing hours billed by

---

[12]     In the Court's experience, paralegals or legal assistants usually undertake tasks of this nature.  Bearing this in mind, it is worth noting that Mr. Goldberg's billing records do not contain a single entry which reflects work performed by a paralegal or the like.

fifteen percent, in part, because counsel billed in fifteen-minute increments instead of six-minute increments).[13]

Rather than scrutinizing the propriety of each individual time entry, the Court respectfully recommends an across-the-board percentage cut to account for excessive, unnecessary or otherwise improper billing.  See De Ping Song v. 47 Old Country, Inc., 09 Civ. 5566 (LDW) (SIL), 2015 U.S. Dist. LEXIS 177623, at *18 (E.D.N.Y. Oct. 1, 2015), adopted by 2016 U.S. Dist. LEXIS 52277 (E.D.N.Y. Mar. 31, 2016) (applying 10% across-the-board reduction in hours to account for excessive, duplicative, or otherwise improper billing); Marshall v. Deutsche Post DHL, 12 Civ. 573 (SJF) (ARL), 2015 U.S. Dist. LEXIS 125869, at *26 (E.D.N.Y. Sept. 21, 2015) (applying 10% across-the-board reduction in hours to account for excessive and duplicative time); Dominguez v. B.S. Supermarket, Inc., 13 Civ. 7247 (RRM) (CLP), 2015 U.S. Dist. LEXIS 39670, at*42-43 (E.D.N.Y. Mar. 5, 2015), adopted by 2015 U.S. Dist. LEXIS 39512 (E.D.N.Y. Mar. 27, 2015) (applying 10% across-the-board reduction to account for excessive billing entries and time billed for administrative tasks).

Based on the foregoing, the Court recommends applying a 10% across-the-board reduction to the hours billed by Mr. Goldberg.

Therefore, in light of the reasonable hourly rate and reduction in hours recommended above, it is respectfully recommended that the District Court award Plaintiff a total of **$147,480.00** in attorney's fees.[14]

---

[13]    Although two of Plaintiff's five claims—breach of contract under common law and unpaid straight wages claim under NYLL § 220—were resolved in Defendants' favor following summary judgment, see Section I(C), supra, the hours spent on these claims do not appear to be severable in any meaningful way.  Therefore, no reduction of hours is recommended on this basis.

[14]    ((408 hours work * (100% – 10%)) * $400)) + (3 hours travel * $200).

**B.      Costs**

Both the FLSA and NYLL provide for an award of costs.  See 29 U.S.C. § 216(b); NYLL

§ 198(4).  "Costs relating to filing fees, process servers, postage, and photocopying are ordinarily

recoverable."  Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co., 545 F. Supp.

2d 260, 269 (E.D.N.Y. 2008) (citing Tips Exports, Inc. v. Music Mahal, Inc., 01 Civ. 5412 (SJF)

(VVP), 2007 U.S. Dist. LEXIS 84399, at *30 (E.D.N.Y. Mar. 27, 2007)).

Here, Plaintiff seeks costs in the amount of $3,169.99 for fees and disbursements, which

includes the following: (1) $350 for filing fees; (2) $893.48 for the transcript of Omogun's

deposition; (3) $1,152.50 for process server fees; and (4) $774.01 for copying expenses.  Plaintiff

provides substantiating documentation in the form of invoices for each of the costs sought, see

Goldberg Decl., ECF No. 119, Exhibit 15, except the filing fee, which is otherwise confirmed

upon review of the docket, see 9/28/2012 Entry.  This Court finds Plaintiff's request for costs

reasonable and adequately supported.  See Siegel v. Bloomberg L.P., 13 Civ. 1351 (DF), 2016

U.S. Dist. LEXIS 38799, at *49-50 (S.D.N.Y. Mar. 22, 2016) (awarding more than $15,000 for

costs associated with filing fees and costs for travel, postage, service of process, research and

stenography following summary judgment motion practice in FLSA action).  Accordingly, it is

respectfully recommended that the District Court **grant** Plaintiff's request for **$3,169.99** in costs.

**V.      CONCLUSION**

First, I respectfully recommend that the District Judge **find** that Defendants must pay the

following in damages to Plaintiff: **$1,842.40** for unpaid straight wages paid below the applicable

prevailing wage; **$10,372.89** in liquidated damages; and **$19,173.72** for unpaid overtime

premium pay for hours worked in excess of forty hours per week, for a total damages award of

**$31,389.01**.

In addition, I respectfully recommend that the District Judge **find** that Defendants are jointly and severally liable for paying Plaintiff's **$150,649.99** in attorney's fees and costs, and that the District Judge **order** Defendants to pay **$11,019.13** in **pre-judgment interest** and **$5.18** per day for each day until judgment is entered.

In light of the foregoing, I respectfully recommend that the District Judge enter a judgment in favor of Plaintiff and against Defendants Choice and Omogun holding Defendants jointly and severally liable for a total damages award of **$182,039** ($31,389.01 (compensatory damages) + $150,649.99 (attorney's fees/costs)), and **$11,019.13** in **pre-judgment interest** plus **$5.18** per day for each day until judgment is entered.

## V.     OBJECTIONS

This report and recommendation will be filed electronically and a copy sent by mail to Defendants Choice and Omogun at 161-15 Rockaway Blvd., Jamaica, New York 11434, the last known address for both Defendants.  See ECF No. 101.  Objections to this report and recommendation must be filed, with a courtesy copy sent to the Honorable Pamela K. Chen, at 225 Cadman Plaza East, Brooklyn, New York 11201, within seventeen days of filing.  Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Dated: August 5, 2016
       Brooklyn, New York

*Vera M. Scanlon*

_____
       VERA M. SCANLON
       United States Magistrate Judge

| Date Range | Weeks | Total Hours Worked | Total OT Hours | Straight Time Rate Paid | OT Rate Paid | Prevailing Wage Rate | OT Rate Required (straight time * 1.5) | OT Increment Owed (OT rate required - OT rate paid) | Total OT Owed (OT rate required * total OT hours) | Prevailing Wage Rate ("PWR") Owed ((PWR required - straight time rate paid) * 80) | Cites |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/10/07 - 8/17/08 | 18 | 1512 | 792 | $9.88 | $9.88 | n/a | $14.82 | $4.94 | $3,912.48 | n/a | Exs. 10, 19, 28 |
| 1/7/08 - 1/20/08 | 2 | 133 | 53 | $8.50 | $8.50 | n/a | $12.75 | $4.25 | $225.25 | n/a | Ex. 16 |
| 2/4/08 - 2/17/08 | 2 | 120 | 40 | $8.50 | $10.00 | n/a | $12.75 | $2.75 | $110.00 | n/a | Ex. 17 |
| 3/17/08 - 3/30/08 | 2 | 100 | 20 | $10.00 | $10.00 | n/a | $15.00 | $5.00 | $100.00 | n/a | Ex. 18 |
| 4/28/08 - 5/11/08 | 2 | 120 | 40 | $11.50 | $8.00 | n/a | $17.25 | $9.25 | $370.00 | n/a | Ex. 19 |
| 5/12/08 - 5/25/08 | 2 | 143 | 63 | $11.50 | $11.50 | n/a | $17.25 | $5.75 | $362.25 | n/a | Ex. 20 |
| 5/26/08 - 6/8/08 | 2 | 130.24 | 50.24 | $11.50 | $10.00 | n/a | $17.25 | $7.25 | $364.24 | n/a | Ex. 21 |
| 6/9/08 - 6/22/08 | 2 | 103 | 23 | $11.50 | $10.00 | n/a | $17.25 | $7.25 | $166.75 | n/a | Ex. 22 |
| 6/23/08 - 7/6/08 | 2 | 127.2 | 47.2 | $12.13 | $10.00 | n/a | $18.20 | $8.20 | $386.80 | n/a | Ex. 23 |
| 7/21/08 - 8/3/08 | 2 | 126 | 46 | $12.13 | $10.00 | n/a | $18.20 | $8.20 | $376.97 | n/a | Ex. 24 |
| 8/18/08 - 8/31/08 | 2 | 124 | 44 | $12.13 | $9.33 | n/a | $18.20 | $8.87 | $390.06 | n/a | Ex. 25 |
| 9/1/08 - 12/7/08 | 14 | 840 | 280 | $10.00 | $10.00 | n/a | $15.00 | $5.00 | $1,400.00 | n/a | Exs. 10, 29 |
| 12/8/08 - 12/21/08 | 2 | 109 | 29 | $10.01 | $12.00 | n/a | $15.02 | $3.02 | $87.44 | n/a | Ex. 26 |
| 12/22/08 - 1/4/09 | 2 | 108 | 28 | $10.00 | $10.00 | n/a | $15.00 | $5.00 | $140.00 | n/a | Ex. 27 |
| 1/05/09 - 1/18/09 | 2 | 104 | 24 | $10.00 | $10.00 | n/a | $15.00 | $5.00 | $120.00 | n/a | Ex. 30 |
| 1/19/09 - 2/1/09 | 2 | 91.2 | 11.2 | $10.00 | $10.00 | n/a | $15.00 | $5.00 | $56.00 | n/a | Ex. 31 |
| 2/12/09 - 2/15/09 | 2 | 91 | 11 | $10.00 | $10.00 | n/a | $15.00 | $5.00 | $55.00 | n/a | Ex. 32 |
| 2/16/09 - 3/1/09 | 2 | 100.12 | 20.12 | $10.00 | $10.00 | n/a | $15.00 | $5.00 | $100.60 | n/a | Ex. 33 |
| 3/2/09 - 3/15/09 | 2 | 91.12 | 11.12 | $10.00 | $10.00 | n/a | $15.00 | $5.00 | $55.60 | n/a | Ex. 34 |
| 3/16/09 - 3/29/09 | 2 | 117 | 32 | $10.29 | $10.29 | n/a | $15.44 | $5.15 | $164.64 | n/a | Exs. 33, 35 |
| 3/30/09 - 4/12/09 | 2 | 101.36 | 21.36 | $10.00 | $10.00 | n/a | $15.00 | $5.00 | $106.80 | n/a | Ex. 35 |
| 4/13/09 - 8/16/09 | 8 | 480 | 160 | $7.25 | $7.25 | n/a | $10.88 | $3.63 | $580.00 | n/a | Ex. 10 |
| 5/11/09 - 5/24/09 | 2 | 96 | 16 | $9.00 | $9.00 | n/a | $13.50 | $4.50 | $72.00 | n/a | Ex. 37 |
| 5/25/09 - 6/7/09 | 2 | 104 | 24 | $8.64 | $8.64 | n/a | $12.96 | $4.32 | $103.68 | n/a | Ex. 38 |
| 6/8/09 - 6/21/09 | 2 | 204 | 124 | $8.47 | $8.47 | n/a | $12.71 | $4.24 | $525.14 | n/a | Ex. 42 |
| 6/22/09 - 7/5/09 | 2 | 215 | 135 | $8.35 | $8.35 | n/a | $12.53 | $4.18 | $563.63 | n/a | Ex. 40 |
| 7/6/09 - 7/19/09 | 2 | 90 | 10 | $13.12 | $15.61 | n/a | $19.68 | $4.07 | $40.70 | n/a | Ex. 41 |
| 8/17/09 - 8/30/09 | 2 | 147.3 | 67.3 | $8.81 | $8.81 | n/a | $13.22 | $4.41 | $296.46 | n/a | Ex. 42 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 8/31/09 - 9/13/09 | 2 | 112 | 32 | $11.86 | $11.86 | n/a | $17.79 | $5.93 | $189.76 | n/a | Ex. 43 |
| 9/14/09 - 9/27/09 | 2 | 120 | 40 | $15.61 | $15.61 | n/a | $23.42 | $7.81 | $312.20 | n/a | Exs. 10, 45 |
| 9/28/09 - 10/11/09 | 2 | 120 | 40 | $12.00 | $10.00 | $17.11 | $25.67 | $15.67 | $626.60 | $408.80 | Exs. 41, 45 |
| 10/12/09 - 1/3/10 | 10 | 600 | 200 | $17.11 | $17.11 | $17.11 | $25.67 | $8.56 | $1,711.00 | $0.00 | Ex. 10 |
| 10/26/09 - 11/8/09 | 2 | 159 | 79 | $15.61 | $13.00 | $17.11 | $25.67 | $12.67 | $1,000.54 | $120.00 | Ex. 46 |
| 1/4/10 - 6/30/10 | 21 | 1260 | 420 | $18.21 | $18.21 | $18.21 | $27.32 | $9.11 | $3,824.10 | $0.00 | Ex. 10 |
| 5/10/10 - 5/23/10 | 2 | 92 | 12 | $10.00 | $10.00 | $18.21 | $27.32 | $17.32 | $207.78 | $656.80 | Ex. 48 |
| 5/24/10 - 6/6/10 | 2 | 84 | 4 | $10.00 | $10.00 | $18.21 | $27.32 | $17.32 | $69.26 | $656.80 | Ex. 49 |
| **Total** | **133** | **8374.54** | **3049.54** | | | | | | **$19,173.72** | **$1,842.40** | |

**\* They legend below uses colors to differentiate between calculations; these colors may not accurately convert on a legal research database**

[green] Weighted avg rate based on multiple, documented pay rates

[blue] Weeks in which there are insufficient records, affidavit is at least partially relied upon to calculate hours worked per week; some weeks are grouped together, notwithstanding documented weeks which fall into same period

[yellow] Single pay checks in which hours are documented, but the pay rate is not documented or otherwise substantiated via Plaintiff's affidavit, weighted avg of prior and subsequent week's pay rate is used

[green-yellow] Weeks in which the pay rate is only partially documented, weighted avg of partially documented rate and prior/subsequent week's pay rate is used to fill in gap

[magenta] Grouped weeks in which affidavit is relied upon to establish hours worked, but Plaintiff has not supported his claimed rate of pay by affidavit or otherwise, the hourly rate used is either the applicable minimum wage rate required under the New York Labor Law or the applicable prevailing wage rate, whichever resulted in a lower damages award for that period